IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| STEPHEN WALDEN, LESLIE WALDEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br><br>Plaintiffs,<br><br>vs.<br><br>THE BANK OF NEW YORK MELLON CORPORATION,  BNY MELLON, N.A.,<br><br>Defendants, | 2:20-CV-01972-CRE |

**MEMORANDUM OPINION**[1]

Cynthia Reed Eddy, Chief United States Magistrate Judge.

This civil class action was initiated in this court on December 21, 2020, by Plaintiffs, Stephen and Leslie Walden (collectively, "the Waldens"),[2] individually and on behalf of those similarly situated, against Defendants Bank of New York Mellon Corporation ("BNY Corp.")[3] and BNY Mellon, N.A.[4] The Waldens assert two causes of action against BNY Mellon only: Count I – breach of fiduciary duty; and Count II – negligence.  The Waldens assert one cause of action against BNY Corp. only: Count III – aiding and abetting breach of fiduciary duty.  The

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment.  (ECF Nos. 28, 29).

[2] The Waldens are residents of Georgia. Compl. (ECF No. 1-1) at ¶ 25.

[3] BNY Corp. is a Delaware corporation and the parent company of BNY Mellon. Compl. (ECF No. 1-1) at ¶¶ 30-31.

[4] BNY Mellon is a nationally chartered bank headquartered in Pittsburgh, Pennsylvania. Compl. (ECF No. 1-1) at ¶ 31.

1

Waldens assert three causes of action against both Defendants: Count IV – breach of contract; and Counts V and VI – violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 – 201-9.2. *See* Compl. (ECF No. 1-1). This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1332(d)(2)(A) (providing for original jurisdiction in situations where the amount in controversy exceeds $5 million and is a class action in which any member of the class of plaintiffs is a citizen of a different state from any defendant).

Presently before the court is a motion by Defendants to dismiss the complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 16). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## I.   BACKGROUND

The Waldens "hired BNY Mellon to provide discretionary investment management services under a fiduciary standard." Compl. (ECF No. 1-1) at ¶ 12. Specifically, in 2014, they signed a client agreement[5] with Defendants and "transferred several million dollars to BNY Mellon for it to invest in its discretion pursuant to the client agreement." *Id*. at ¶ 44. "In the Agreement, Defendants specifically acknowledged and agreed that BNY Mellon 'shall be a fiduciary with respect to the discretionary investment management powers set out in the [agreements with the

---

[5] The Waldens actually signed several related agreements with BNY Mellon, including two different versions of a BNY Wealth Management Agreement (one for IRAs and one for non-retirement related accounts) and an Investment Management Agreement (collectively "Agreement"). Compl. (ECF No. 1-1) at ¶ 45. Although Plaintiffs did not attach these Agreements to the complaint, they do refer to them in the Complaint, and Defendants attached them to their their motion to dismiss. *See e.g.*, Compl (ECF No. 1-1) at ¶¶ 17-22; Defs.' Dec. (ECF No. 17) at Exhibits A-J. "Documents that the defendant attaches to the motion to dismiss **are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim**; as such, they may be considered by the court." *Pryor v. Nat'l Collegiate Athletic Assn.*, 288 F.3d 548, 559-60 (3d Cir. 2002) (quoting 62 Fed. Proc., L.Ed. § 62:508 (citations omitted) (emphases added)).

clients].'" *Id*. at ¶ 48.  The Agreement also provided that the investment manager would not, in its sole discretion, invest in any funds affiliated with Defendants. *See id*. at ¶ 50(c).  According to the Waldens, Defendants not only invested in affiliated funds, but also collected fees and received other unauthorized compensation because of these investments.  Thus, on December 21, 2020, the Waldens brought this class action complaint against Defendants asserting the aforementioned causes of action. (ECF No. 1-1).  On February 26, 2021, Defendants filed the instant motion to dismiss, declaration, and brief in support thereof pursuant to Fed. Rule Civ. Pro. 12(b)(6) for failure to state a claim. (ECF Nos. 16-18).  Plaintiffs filed a response thereto, and Defendants filed a reply. (ECF Nos. 25-26).  This matter is now ripe for disposition.

## II.  STANDARD OF REVIEW

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  Nevertheless, the court need not accept as true "unsupported

conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need to allege detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and be "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. [] Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Finally, "when a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments." *Ricoh USA, Inc. v. Bailon*,

419 F. Supp. 3d 871, 875 (E.D. Pa. 2019). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust. Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (internal citations omitted).

**III.   DISCUSSION**

    *A.   Securities Litigation Uniform Standards Act ("SLUSA") Preemption*

Defendants first contend that the entire complaint should be dismissed because this litigation is preempted by SLUSA, 15 U.S.C. § 78bb.[6] *See* Defs.' Br. (ECF No. 18) at 8-13. The statute provides the following, in relevant part.

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
>   (A)  a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

---

[6] By way of background, in 1995, Congress passed the Private Securities Litigation Reform Act (PSLRA), which curbed "perceived abuses" of federal class-action securities litigation by imposing special requirements and obstacles on claimants filing such actions. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006); *see also* 15 U.S.C. §§ 77z–1, 78u–4. After PSLRA became law, some claimants responded by "avoid[ing] the federal forum altogether," bringing previously rare "class actions [for nationally traded securities] under state law, often in state court" instead. *Dabit*, 547 U.S. at 82. In 1998, Congress sought to close the gap in coverage by enacting SLUSA, which imposed limits on the ability to bring certain class actions in either state or federal court. *See* 15 U.S.C. § 78bb(f)(1).

    In determining whether SLUSA requires dismissal, courts look beyond the face of the complaint. *See Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 304 (3d Cir. 2005) ("SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting."); *see also Romano v. Kazacos*, 609 F.3d 512, 523 (2d Cir. 2010) ("SLUSA requires our attention to both the pleadings and the realities underlying the claims.") Thus, if the gravamen of a complaint alleging breach of fiduciary duty really involves fraud, misrepresentation, schemes or deceit, then the complaint must be analyzed pursuant to SLUSA. *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1286 (10th Cir. 2008) (pointing out that artful drafting and disclaimers are ineffective for avoiding SLUSA where alleged conduct falls within scope of federal securities laws).

5

> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

"To simplify, SLUSA deprives a federal court of jurisdiction to hear (1) a covered class action (2) based on state law claims (3) alleging that the defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security." *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1050 (9th Cir. 2019) (internal quotation marks omitted). Instantly, all parties agree that the complaint in this matter satisfies the following elements of SLUSA preemption: 1) it is a covered class action; 2) based upon state law claims; 3) for covered securities. *See* Defs.' Br. (ECF No. 18) at 9; Pl.'s Br. (ECF No. 25) at 4. Accordingly, this Court considers only whether there was "a misrepresentation or omission of a material fact" or the use of "a manipulative or deceptive device" "in connection with" the purchase or sale of the securities at issue.

Defendants contend "purchases by an investment advisor on a client's behalf satisfy SLUSA's 'in connection with' requirement." Defs.' Br. (ECF No. 18) at 9. Plaintiffs respond that "a plaintiff who makes no buy or sell decisions at all falls outside SLUSA's reach." Pls.' Br. (ECF No 25) at 5. In other words, it is Plaintiffs' position that SLUSA does not apply in situations where buy/sell decisions are made by an investment advisor, as opposed to the investor himself or herself, as occurred here.

In *Dabit*, "the [Supreme] Court stressed that the 'in connection with' requirement should be interpreted broadly, as '[a] narrow reading of the statute would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose,' which is to prevent state-law class actions from end-running the PSLRA." *Banks*, 929 F.3d at 1050 (quoting *Dabit*, 547 U.S. at 86).

6

"The Court explained that 'it is enough that the fraud alleged 'coincide' with a securities transaction — whether by the plaintiff or by someone else' — to meet the 'in connection with' requirement." *Id*. Subsequently, in *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377 (2014), the Supreme "Court revisited the 'in connection with' requirement." *Banks*, 929 F.3d at 1050-51 (9th Cir. 2019). The Court held that the individual making the buy/sell decision "must be a party other than the fraudster." *Troice*, 571 U.S. at 388. "If the only party who decides to buy or sell a covered security as a result of a lie is the liar, that is not a 'connection' that matters." *Id*. "[T]he classic paradigms of securities violations 'in connection with' buying or selling a security involve insider trading, manipulation of share prices, diversion of investment opportunities, fraudulent overvaluation, and similar dishonest practices that relate directly to the securities markets." *In re Robinhood Outage Litig.*, 495 F. Supp. 3d 831, 834 (N.D. Cal. 2020).

In *Taskir v. Vanguard Group*, 930 F.3d 95 (3d Cir. 2018), the Third Circuit considered the interplay between *Dabit* and *Troice*. In *Taskir*, the plaintiffs filed a civil complaint against Vanguard, "an investment services company that offers retail securities brokerage accounts to consumers." *Id*. at 96. The plaintiffs believed "that Vanguard was overcharging sales commissions to clients meeting certain balance thresholds." *Id*. Vanguard filed a motion to dismiss the complaint, arguing that the action was preempted by SLUSA, and the District Court denied that motion. Vanguard filed an interlocutory appeal to the Third Circuit, which held that "overcharges of commissions do not have a 'connection that matters' to the securities transactions at issue." *Id*. at 100. Specifically, in *Taskir*, the Third Circuit accepted the plaintiffs' argument that "the overcharges are not the result of a material misrepresentation about securities transactions, but rather a contractual breach that is tangentially related to the securities transactions." 903 F.3d at 99.

> In this case, Plaintiffs assert that
>
> > Defendants breached each of the above commitments to Plaintiffs and other Class members due to the Bank's improper and unauthorized practice of using client funds to purchase affiliated "BNY Mellon Securities;" the Bank's purchase of "BNY Mellon Securities" while operating under an undisclosed conflict of interest; and the Bank's use of a predetermined program that preferred underperforming, conflicted, affiliated funds that charged excess fees and underperformed other, non-conflicted investment options, rather than making individualized and prudent investment decisions on its clients' behalf.

Compl. (ECF No. 1-1) at ¶ 51. Thus, as in *Taskir*, the Plaintiffs are alleging that Defendants purchased affiliated funds, and benefitted from those purchases, in violation of both their fiduciary duty to Plaintiffs and an agreement not to purchase those funds. In other words, the misrepresentations being alleged sound in breach of contract and breach of fiduciary duty, rather than "material misrepresentations about the securities transactions." *Taskir*, 903 F.3d at 99. Moreover, this conclusion is consistent with *Bernard v. BNY Mellon, Nat'l Ass'n*, 2019 WL 2462606 (W.D. Pa. 2019), report and recommendation adopted, 2019 WL 2492293 (W.D. Pa. 2019). In that case, this Court considered allegations "that BNY Mellon breached its fiduciary duty and acted imprudently when it entrusted assets to Dreyfus and purchased shares in those funds alleged to have been poorly performing such that a prudent investor would have been dissuaded from investing and continuing to invest in those funds." *Id*. at *6. This Court held that SLUSA did not preempt such claims because the plaintiffs were "alleging that there was a breach of fiduciary duty through imprudent investment decisions, rather than fraud or deceit such that SLUSA would preempt the state law claim." *Id*.

Thus, because Defendants have failed to convince this Court that the alleged misrepresentations have satisfied the "in connection with" element necessary for SLUSA preemption, Defendants' motion to dismiss on the basis that SLUSA preempts this complaint is denied.

### B. Customer Complaint Provisions

Defendants next contend that this Court should dismiss the Complaint because "Plaintiffs fail to allege that they complied with the Agreements' customer complaint provisions." Defs.' Br. (ECF No. 18) at 13. Specifically, it is Defendants' position that "not less than once every three (3) months, Plaintiffs received a statement advising them to report any disagreements with the transactions listed." *Id*. at 14. According to Defendants, Plaintiffs' failing to file notice of disagreement with any statements of transactions they received renders those transactions to have been approved by Plaintiffs. *Id*. Thus, Defendants contend that because the Waldens never provided such notice, all transactions were approved and cannot serve as a basis for a breach of contract claim. *Id*.

A review of this argument reveals that Defendants are not merely relying on the Agreements, but also rely upon this Court accepting as true the fact that Plaintiffs did not provide the required notice. According to Defendants, Plaintiffs' failure to plead that they did provide notice is evidence of the fact that they did not provide such notice and were required to do so. Such an inquiry and determination goes well beyond the scope of review in a motion to dismiss, where this Court only looks to the facts actually contained in the complaint to determine whether a plaintiff has stated a claim upon which relief may be granted. The inquiry into which Defendants ask this Court to engage clearly requires discovery; thus, this Court denies Defendants' motion to dismiss on this basis.[7]

---

[7] It is Plaintiffs' position that these notice provisions are inapplicable because the allegations in the Complaint are for transactions that were either not disclosed or were subject to "secret and undisclosed kickbacks." Pl.'s Br. (ECF No. 25) at 14. While this may be a valid response to Defendants' argument on the merits, this Court concludes that it need not reach that argument at this juncture.

9

*C. Breach of Contract Claims*

Defendants also argue that the claims for breach of contract (Count IV) against both Defendants be dismissed. First, they contend that Plaintiff entered into Agreements with BNY Mellon only, and therefore the breach of contract claim against BNY Corp. should be dismissed on that basis. Defs.' Br. (ECF No. 18) at 14 n.10. Plaintiffs respond the breach of contract claim against BNY Corp. should not be dismissed at this time because "[t]he relative responsibilities of the parties pursuant to the agreements is best developed through discovery." Pls.' Br. (ECF No. 25) at 17.

In their Complaint, Plaintiffs assert that the "Agreement is a contract between Plaintiffs and … Defendants." Compl. (ECF No. 1-1) at ¶ 134.  This Court recognizes that the Agreements referred to in the Complaint and attached to Defendants' motion to dismiss were signed only by a representative of BNY Mellon and not BNY Corp.[8] However, the Agreements mention that BNY Mellon is a subsidiary of BNY Corp. and that BNY Corp. may collect certain fees under some circumstances.[9] Thus, at this juncture, it is appropriate to permit Plaintiffs to conduct discovery as to the relationship between the two entities to determine whether a breach of contract claim would

---

[8] *See* BNY Mellon Wealth Management Agreement (ECF No. 17-1) at 13; BNY Mellon Wealth Management Agreement (ECF No. 17-2) at 11; BNY Mellon Wealth Management Agreement (ECF No. 17-3) at 11; BNY Mellon Wealth Management Agreement (ECF No. 17-4) at 11; IRA Trust Adoption Agreement (ECF Nos. 17-6) at 8; IRA Trust Adoption Agreement (ECF No. 17-7) at 8; IRA Trust Adoption Agreement (ECF No. 17-9) at 4;  and IRA Trust Adoption Agreement (ECF Nos. 17-10) at 3.

[9] *See* BNY Mellon Wealth Management Agreement (ECF No. 17-1) at 13; BNY Mellon Wealth Management Agreement (ECF No. 17-2) at 11; BNY Mellon Wealth Management Agreement (ECF No. 17-3) at 11; BNY Mellon Wealth Management Agreement (ECF No. 17-4) at 11; IRA Trust Adoption Agreement (ECF Nos. 17-6) at 13; IRA Trust Adoption Agreement (ECF No. 17-7) at 5; IRA Trust Adoption Agreement (ECF No. 17-9) at 6; and IRA Trust Adoption Agreement (ECF No. 17-10) at 5.

indeed survive summary judgment against BNY Corp. Accordingly, this Court denies BNY Corp.'s motion to dismiss the breach of contract claim against it.

Next, BNY Mellon contends that this Court should dismiss the breach of contract claim against it because it acted properly and in accordance with the Agreements. *See* Defs.' Br. (ECF No. 18) at 14-16. According to Defendants, the Agreements provided that Defendants could invest in affiliated funds and receive fees in connection with them; thus, BNY Mellon could not have breached the contract. *Id.* at 15. Plaintiffs respond that the provisions referenced "neither *disclosed* the secret kickbacks, nor *identified or explained* the conflict created by purchasing affiliated funds." Pls.' Br. (ECF No. 25) at 16 (emphasis in original). It is Plaintiffs' position that Defendants' purchasing of affiliated funds "generated secret, self-dealing payments and unidentified conflicts." *Id.* Furthermore, Plaintiffs assert that the breach of contract occurred when Defendants placed "*substantially all* of Plaintiffs' assets in these underperforming affiliated funds" in violation of "the contractual duty to create an 'individualized assessment' of client needs." *Id.* at 17 (emphasis in original).

In Pennsylvania, "[i]t is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Instantly, Plaintiffs have satisfied the aforementioned pleading requirements. There is no doubt there were Agreements were entered into between the parties, and Plaintiffs specifically contend that those Agreements were breached through a series of actions by Defendants. Discovery may indeed reveal that Defendants actions were indeed in compliance with the Agreements; however, at this

11

stage, Plaintiffs are entitled to proceed with this claim. Accordingly, Defendants' motion to dismiss the breach of contract claim is denied.

### D. Breach of Fiduciary Duty Claim

BNY Mellon argues that the breach of fiduciary duty claim (Count I) should be dismissed pursuant to the gist-of-the-action doctrine.[10] *See* Defs.' Br. (ECF No. 18) at 16-18. "The gist-of-the-action doctrine [] exists to maintain the conceptual distinction between tort and contract claims; the doctrine 'precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.'" *Cessna v. REA Energy Coop., Inc.*, 258 F. Supp. 3d 566, 592 (W.D. Pa. 2017) (quoting *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002)).

Under the 'gist of the action' test,

> to be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral.... [T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.

*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103-04 (3d Cir. 2001) (internal citations and quotation marks omitted).

In this case, the relationship between Plaintiffs and BNY Mellon is set forth by the Agreements, and the Agreements impose a fiduciary duty upon BNY Mellon as a financial advisor. *See* Compl. (ECF No. 1) at ¶ 3 ("Specifically, BNY Mellon and BNY Corp. promised in their

---

[10] BNY Mellon also contends that the breach of fiduciary duty claim should be dismissed because the breach of contract claim should be dismissed. *See* Defs.' Br. (ECF No. 18) at 16. However, as discussed *supra*, this Court has concluded that the breach of contract claim should not be dismissed at this juncture; thus, this Court will not dismiss the breach of fiduciary duty claim for that reason.

client agreements that BNY Mellon would act as a fiduciary with respect to the wealth management services it offered to Plaintiffs and the other Class members."). In fact, in Plaintiffs' claim for breach of contract, they allege that "Defendants promised that BNY Mellon would manage their funds according to a fiduciary standard. Defendants breached this promise to Plaintiffs…" *Id.* at ¶ 135(e).

Pennsylvania law does not automatically impose a fiduciary relationship between a financial advisor and a client. *See Yenchi v. Ameriprise Financial, Inc.*, 161 A.3d 811, 822 (Pa. 2017). Additionally, Plaintiffs have not set forth any facts that demonstrate that a fiduciary relationship outside of that imposed by the contract existed between the parties. Based on the foregoing, this Court concludes the fiduciary relationship between Plaintiffs and Defendants was a duty established through contract, as opposed to a duty "imposed as a matter of social policy." *Cessna*, 258 F. Supp. 3d at 592. Accordingly, this Court grants BNY Mellon's motion to dismiss the breach of fiduciary duty claim because it is barred by the gist-of-the-action doctrine.[11] However, this Court will grant Plaintiffs leave to amend the complaint to the extent they are able to cure this defect. *See Ricoh USA, Inc.*, 419 F. Supp. 3d at 875.

E. Negligence Claim

---

[11] Because Plaintiffs' claim against BNY Corp. for aiding and abetting breach of fiduciary duty (Count III) is completely dependent upon the breach of fiduciary duty claim, that claim is dismissed as well. *See* Defs.' Br. (ECF No. 18) at 18; *see DePuy Synthes Sales, Inc. v. Globus Med.*, Inc., 259 F. Supp. 3d 225, 242 (E.D. Pa. 2017) (holding that where breach of fiduciary duty claim is dismissed pursuant to the gist-of-the-action doctrine, aiding and abetting breach of fiduciary duty claim must be dismissed as well). However, this Court will grant Plaintiffs leave to amend the complaint to the extent they are able to cure this defect. *See Ricoh USA, Inc.*, 419 F. Supp. 3d at 875.

BNY Mellon also contends that the negligence claim (Count II) against it should be dismissed pursuant to both the gist-of-the-action and economic loss doctrines.[12] According to Defendants, "Plaintiffs' negligence claim is entirely duplicative of its breach of contract claim because [they] assert[] that BNY Mellon had a duty to provide advisory services that it breached [and have failed] to identify any source of the duty underlying the claim aside from the Agreements." Defs.' Br. (ECF No. 18) at 19. "The gist of the action doctrine bars a tort claim when (1) the claim arises from a contract between the parties, (2) the duties breached were created by the contract, (3) liability derives from the contract, or (4) the success of the tort claim is wholly dependent upon the contract's terms." *Cunningham Lindsey U.S., Inc. v. Bonnani*, No. 2014 WL 1612632, at *5 (M.D. Pa. 2014).

Instantly, Plaintiffs' negligence claim duplicates their breach of contract claim. With respect to negligence, Plaintiffs contend that "BNY Mellon owed a duty of care to Plaintiffs and each of the other Class members to provide advisory services according to the standard of care imposed by law." Compl. (ECF No. 1) at ¶ 124. In their breach of contract claim, Plaintiffs set forth a number of ways that Defendants broke promises and did not act in accordance with Plaintiffs' best interests. *Id*. at ¶ 135. It is the contract between Plaintiffs and Defendants that establishes the relationship between the parties, and but for that contract, Defendants owed no duty, and therefore could not have breached such duty, to Plaintiffs. Thus, Plaintiffs have failed to establish an independent negligence claim that could exist outside of the breach of contract

---

[12] Initially, Defendants also contended that the UTPCPL claims (Counts V and VI) should be dismissed pursuant to the economic loss doctrine. *See* Defs.' Br. (ECF No. 18) at 17. "[T]he economic loss doctrine bars a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior." *Harris v. O'Connor Truck Sales, Inc.*, 153 F. Supp. 2d 584, 588 (E.D. Pa. 2001). However, Defendants have withdrawn that argument pursuant to the Third Circuit's decision in *Earl v. NVR, Inc.*, 990 F.3d 310 (3d Cir. 2021) (holding the economic loss doctrine does not serve as a bar to claims brought pursuant to the UTPCPL).

claim, and therefore this Court grants BNY Mellon's motion to dismiss Plaintiffs' negligence claim.[13]  However, this Court will grant Plaintiffs leave to amend the complaint to the extent they are able to cure this defect. *See Ricoh USA, Inc.*, 419 F. Supp. 3d at 875.

### F.  UTPCPL Claims

Finally, Defendants contend that Plaintiffs have failed to state a valid UTPCPL claim because "[t]he plain language of the Agreements forecloses any allegation that Plaintiffs justifiably relied on Defendants' purported misrepresentations or omissions relating to affiliated mutual funds." Defs.' Br. (ECF No. 18) at 19.  According to Defendants, because the Agreements expressly authorized Defendants to invest in affiliated mutual funds, Plaintiffs' claims for violations of the UTPCPL cannot stand.

"The UTPCPL is Pennsylvania's consumer protection law. Its purpose is to protect the public from unfair or deceptive business practices." *Waldschmidt v. NVR, Inc.*, 2018 WL 6433910, at *10 (W.D. Pa. 2018).  The statute provides the following, in relevant part.

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 31 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2(a).

---

[13] Because this Court dismisses the negligence claim pursuant to the gist-of-the-action doctrine, it will not reach the issue of whether this claim would be dismissed pursuant to the economic loss doctrine as well.

15

As stated by Defendants, "[i]t is well-settled law that any private cause of action under the UTPCPL requires proof of justifiable reliance." *Waldschmidt*, 2018 WL 6433910, at *10. According to Plaintiffs, the Agreements themselves were "deceptive as to the fiduciary services provided." Pls.' Br. (ECF No. 25) at 18. In other words, Plaintiffs are asserting that they did indeed rely on the Agreements, but Defendants did not act in accordance with them. Such facts, if true, are adequate to state a claim pursuant to the UTPCPL. *See Perry v. Markman Cap. Mgmt., Inc.*, 2002 WL 31248038, at *6 (E.D. Pa. 2002) (denying defendant's motion to dismiss a UTPCPL claim where plaintiffs asserted they purchased investment services from defendant to increase their retirement income and then defendant engaged in fraudulent or deceptive conduct by "investing beyond the authority granted in securities that contradicted plaintiffs' goals" and "failing to inform them of risks involved"). Accordingly, this Court denies Defendants' motion to dismiss the UTPCPL claims on this basis.

IV. **CONCLUSION**

Based on the foregoing, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' claims for breach of fiduciary duty (Count I) and negligence (Count II) against BNY Mellon, as well Plaintiffs' claim for aiding and abetting breach of fiduciary duty (Count III) against BNY Corp., are dismissed without prejudice, and Plaintiffs are permitted to amend the complaint. Defendants' motion to dismiss is denied with respect to Plaintiffs' claims for breach of contract (Count IV) and violations for the UTPCPL (Counts V and VI). An appropriate Order follows.

Dated: June 7, 2021                .                              BY THE COURT:

                                                                 s/ Cynthia Reed Eddy
                                                                 Chief United States Magistrate Judge

cc: Counsel of record

*via electronic filing*