IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | | |
|---|---|---|
| STEPHEN WALDEN, LESLIE WALDEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; | ) ) ) ) | 2:20-CV-01972-CRE |
| Plaintiffs, | ) ) ) ) | |
| vs. | ) ) ) | |
| THE BANK OF NEW YORK MELLON CORPORATION,  BNY MELLON, N.A., | ) ) ) ) | |
| Defendants, | ) ) | |

**<u>MEMORANDUM OPINION</u>**[1]

Cynthia Reed Eddy, Chief United States Magistrate Judge.

This civil class action was initiated in this court on December 21, 2020, by Plaintiffs, Stephen and Leslie Walden (collectively, "the Waldens"),[2] individually and on behalf of those similarly situated, against Defendants Bank of New York Mellon Corporation ("BNY Corp.")[3] and BNY Mellon, N.A.[4]  In their First Amended Complaint, Plaintiffs assert five causes of action against both Defendants: Count I – breach of fiduciary duty; Count II – negligence; Count III – breach of contract; and Counts IV and V – violations of the Pennsylvania Unfair Trade Practices

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment.  (ECF Nos. 28, 29).

[2] The Waldens are residents of Georgia. First Amended Complaint ("FAC") (ECF No. 40) at ¶ 12.

[3] BNY Corp. is a Delaware corporation and the parent company of BNY Mellon. FAC (ECF No. 40) at ¶¶ 17-18.

[4] BNY Mellon is a nationally chartered bank headquartered in Pittsburgh, Pennsylvania. FAC (ECF No. 40) at ¶ 18.

and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 - 201-9.2.  *See* FAC (ECF No. 40).
This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C.
§ 1332(d)(2)(A) (providing for original jurisdiction in situations where the amount in controversy
exceeds $5 million and is a class action in which any member of the class of plaintiffs is a citizen
of a different state from any defendant). *Id*. at ¶ 22.

Presently before the court is a motion by Defendants to dismiss the breach of fiduciary duty
and negligence claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a
claim.  (ECF No. 43).  For the reasons that follow, Defendants' motion is granted.

## I.  BACKGROUND

Plaintiffs hired Defendants "to provide discretionary investment management services
under a fiduciary standard." FAC (ECF No. 40) at ¶ 25.  "Plaintiffs and each of the other Class
members signed client agreements with Defendants pursuant to which BNY Mellon became each
of their discretionary investment managers." *Id*. at ¶ 40.  Specifically, in 2014, Plaintiffs
"transferred several million dollars to BNY Mellon for it to invest in its discretion pursuant to the
client agreement." *Id*. at ¶ 41. "The client agreement consisted of multi-part agreements that
included various sections and addendums, including, amongst others, a 'BNY Wealth
Management Agreement,' and an 'Investment Management Agreement.'"[5] *Id*. at ¶ 42 (hereinafter
referred to collectively as the "Agreements").[6]  The Agreements provided a number of contractual
responsibilities of Defendants toward Plaintiffs, including limiting the ability of the wealth
manager to make recommendations with respect to securities issued by BNY Mellon, its

[5] Plaintiffs signed two versions of the Investment Management Agreement – one for IRAs opened
with BNY Mellon and a second for non-retirement accounts. FAC (ECF No. 40) at ¶ 42.

[6] Plaintiffs did not attach the Agreements to their Complaint or FAC.  Defendants attached the
Agreements to their motion to dismiss. *See* Defs.' Declaration (ECF No. 17) at Exhibits A-J.

subsidiaries, or affiliates. *Id*. at ¶ 49(c).   According to Plaintiffs, Defendants breached the Agreements due to their "improper and unauthorized practice of using client funds to purchase affiliated 'BNY Mellon Securities'; the Bank's purchase of 'BNY Mellon Securities' while operating under an undisclosed conflict of interest; and the Bank's use of a predetermined program that preferred underperforming, conflicted, affiliated funds that charged excess fees and underperformed other, non-conflicted investment options, rather than making individualized decisions on its clients' behalf." *Id*. at ¶ 50.

Plaintiffs also assert that the Agreements were breached by Defendants receiving compensation not authorized by the Agreements.  Plaintiffs paid a "flat fee that was determined by the amount of assets a client entrusted to the Bank." *Id*. at ¶ 53.  "The Agreement[s] [] permitted BNY Mellon to charge an Advisory Fee (as well as a few other fees) set forth in the agreement." *Id*. at ¶ 56.   According to Plaintiffs, "Defendants [] breached these covenants by receiving unauthorized compensation not authorized by these provisions, and by permitting their affiliates to earn fees other than those promised in or permitted by the fee schedule." *Id*.

Thus, on December 21, 2020, Plaintiffs brought this class action complaint against Defendants asserting several causes of action, including breach of fiduciary duty, negligence, aiding and abetting breach of fiduciary duty, breach of contract, and UTPCPL violations. Compl. (ECF No. 1-1).  On February 26, 2021, Defendants filed a motion to dismiss, declaration, and brief in support thereof pursuant to Fed. Rule Civ. Pro. 12(b)(6) for failure to state a claim. (ECF Nos. 16-18).  Plaintiffs filed a response thereto, and Defendants filed a reply. (ECF Nos. 25-26).

On June 7, 2021, this Court filed a Memorandum Opinion granting in part and denying in part Defendants' motion to dismiss.  Specifically, this Court granted Defendants' motion to dismiss with respect to Plaintiffs' claims for breach of fiduciary duty, negligence, and aiding and abetting

breach of fiduciary duty, and permitted Plaintiffs to amend their complaint.  This Court denied Defendants' motion to dismiss with respect to Plaintiffs' claims for breach of contract and violations of the UTPCPL.

Thus, on June 28, 2021, Plaintiffs filed the First Amended Complaint, where they indeed amended the breach of fiduciary duty and negligence causes of action.[7] *See* FAC (ECF No. 40). On July 13, 2021, Defendants filed the partial motion to dismiss at issue here. (ECF No. 43). Specifically, Defendants move once again to dismiss the breach of fiduciary and negligence causes of action.  (ECF No. 44).  Plaintiffs have filed a response, and Defendants have filed a reply; thus, this matter is ripe for disposition. (ECF Nos. 46, 47).

## II.    STANDARD OF REVIEW

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the

---

[7] Plaintiffs did not amend their aiding and abetting breach of fiduciary duty cause of action.  In addition, Plaintiffs maintained their breach of contract and UTPCPL causes of action.

necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).    Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need to allege detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level" and be "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555.  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. [] Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id*.  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Finally, "when a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments." *Ricoh USA, Inc. v. Bailon*, 419 F. Supp. 3d 871, 875 (E.D. Pa. 2019). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust. Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (internal citations omitted).

## III.   DISCUSSION

### A.   Breach of Fiduciary Duty Claim

Defendants contend that the breach of fiduciary duty claim (Count 1) should be dismissed once again pursuant to the gist-of-the-action doctrine.[8] *See* Defs.' Br. (ECF No. 44) at 4-6.  "The gist-of-the-action doctrine [] exists to maintain the conceptual distinction between tort and contract claims; the doctrine 'precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.'" *Cessna v. REA Energy Coop., Inc.*, 258 F. Supp. 3d 566, 592 (W.D. Pa. 2017) (quoting *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002)).  "A tort claim is barred by the gist of the action doctrine if it arises solely from a contract between the parties, if the duties allegedly breached were grounded in the contract itself, or if the claim's success is wholly dependent on the terms of a contract." *Ginley v. E.B. Mahoney Builders, Inc., Edwin B. Mahoney*, 2005 WL 27534, at *2 (E.D. Pa. Jan. 5, 2005). "Typically, a breach of fiduciary duty claim will survive the gist of the action doctrine only where the fiduciary relationship in question is well-established and clearly defined by Pennsylvania law or policy, such as (for example) the social policy which defines relationships among majority and minority shareholders." *Id*.

---

[8] In this Court's prior Memorandum Opinion, this Court concluded that "Plaintiffs have not set forth any facts that demonstrate that a fiduciary relationship outside of that imposed by the contract existed between the parties." Memorandum Opinion (ECF No. 35) at 13.

Defendants contend that the relationship between Plaintiffs and Defendants "exists only because of the" Agreements, "and those Agreements expressly disclaim any duty other than that set forth therein." Defs.' Br. (ECF No. 44) at 5-6; *see also* Agreement (ECF Nos. 17-1, 17-2, 17-3, and 17-4) (stating that Defendants "shall not have any other fiduciary duties or responsibilities to the client"). Plaintiffs respond that the gist-of-the-action doctrine is inapplicable here because "Pennsylvania law and federal law impose a fiduciary duty on the Defendants that arises independent of the Agreements." Pls.' Br. (ECF No. 45) at 6. Specifically, Plaintiffs point to general Pennsylvania case law regarding breach of fiduciary duty as well as one federal law, 12 C.F.R. § 9.101. This Court will examine both.

In *Yenchi v. Ameriprise Financial, Inc.*, 161 A.3d 811 (Pa. 2017), the Pennsylvania Supreme Court considered "whether a fiduciary duty can arise in a consumer transaction for the purchase of a whole life insurance policy based upon the advice of a financial advisor where the consumer purchasing the policy does not cede decision-making control over the purchase to the financial advisor." *Id.* at 814. The Yenchis conceded that a fiduciary relationship between them and the financial advisor was not created as a matter of law. Instead, they contended a fiduciary duty existed because there was a confidential relationship between the parties because the financial advisor "held a 'vastly superior' position to them with respect to his knowledge of insurance products and financial services, and that over time, they came to trust him and repose confidence in his advice to them." *Id.* at 822. The Supreme Court held that the evidentiary record fell "far short of establishing a fiduciary relationship with" their financial advisor. *Id.* In other words, this case does not support the proposition that Pennsylvania law recognizes an independent fiduciary duty between an investor and financial advisor.

In the instant matter, while the Waldens did indeed cede control over their investment decisions to Defendants, they did so pursuant to the contract that existed between the parties, not pursuant to an independent fiduciary duty clearly recognized by Pennsylvania law. *See Yenchi,* 161 A.3d at 820 (pointing out that certain fiduciary duties exist as a matter of law, including principal and agent, trustee and cestui que trust, attorney and client, and partners); *Ginley v. E.B. Mahoney Builders, Inc., Edwin B. Mahoney*, 2005 WL 27534, at *2 (E.D. Pa. Jan. 5, 2005) (referencing the fiduciary relationship between majority and minority shareholders).  Accordingly, the Waldens have not satisfied this Court that Pennsylvania case law recognizes a separate fiduciary duty as a matter of law under these circumstances.

In further support of their contention, Plaintiffs also point to "federal banking law" which imposed a fiduciary duty on Defendants. Pls.' Br. (ECF No. 46 at 8. Specifically, they reference 12 C.F.R. § 9.101, which provides that an investment advisor is acting in a fiduciary capacity. However, Plaintiffs provide no support for this proposition or explain how this regulation creates a duty that would survive outside of the contractual relationship between Plaintiffs and Defendants at issue here.

In this matter, the relationship between Plaintiffs and Defendants was established by the contract between the parties, and the allegations in the First Amended Complaint are founded upon that contract.  Plaintiffs repeated assertions that there is an independent fiduciary duty that exists outside of the contract do not make it so.  Instead, this is exactly the type of case where the gist-of-the-action applies, and this Court concludes that the breach of fiduciary duty claim shall be dismissed. *See Jodek Charitable Tr., R.A. v. Vertical Net Inc.*, 412 F. Supp. 2d 469, 479 (E.D. Pa. 2006) (granting defendant's motion to dismiss plaintiff's breach of fiduciary duty claim pursuant

to the gist-of-the-action doctrine where "the parties' obligations are defined by the terms of contracts, and not by the larger social policies embodied by the law of torts").

  *B. Negligence Claim*

  Defendants also contend that the negligence claim (Count II) against them should be dismissed pursuant to both the gist-of-the-action and economic loss doctrines. Defs.' Br. (ECF No. 44) at 1-5.  Defendants assert, for the reasons set forth *supra*, that the gist-of-the-action doctrine also bars the negligence claim.  Plaintiffs respond that pursuant to *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014), the gist-of-the-action doctrine does not apply "because Pennsylvania imposes a specific professional duty on Defendants that arises outside the Agreement[s]." Pls.' Br. (ECF No. 46) at 11.

  In *Bruno*, the Brunos purchased a homeowners insurance policy from the defendant insurance company, which included separate coverage for damage caused by mold. 106 A.3d at 51.  The insurance company was obligated to pay up to $5,000 for physical property loss, as well as pay for the cost of testing to confirm the existence of or absence of mold. *Id*. If mold were determined to be present, the insurance company was obligated to pay for its removal. *Id*. The Brunos discovered what they believed to be mold and contacted the insurance company and requested for it to be tested. *Id*. The insurance adjustor informed the Brunos that the mold was "harmless" and refused payment on that basis. *Id*. at 52-53.  Based on the assurance that the mold was harmless, the Brunos continued living there, discovered more mold, and began to experience serious health issues. *Id*. The Brunos were eventually forced to vacate the house and for it to be demolished, and subsequently filed a complaint against the insurance company asserting various causes of action, including negligence.  The insurance company moved to dismiss the complaint,

and asserted, *inter alia*, that the negligence claim was barred by the gist-of-the-action doctrine.  In considering that conclusion, the Supreme Court set forth the following.

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno*, 106 A.3d at 68 (internal citations omitted).  The Pennsylvania Supreme "Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party." *Id.* at 69.  In *Bruno*, the defendant did pay the $5,000 it owed to the plaintiffs pursuant to the contract. The crux of the plaintiffs' claim was that the defendant performed its contractual duties in a negligent manner by informing the Brunos that the mold was harmless, and it is this action that caused the harm.[9]  Thus, the Supreme Court concluded that the allegations sounded in tort, not contract, and permitted the Brunos to pursue a negligence cause of action.

In the instant case, the Plaintiffs allege in a conclusory fashion that Defendants "acted negligently in performing their contractual obligations." FAC (ECF No. 40) at ¶ 130.  However, the specific allegations focus only on breaches of contractual obligations, including the purchase of affiliated securities despite the promise not to do so, and to make investment decisions only in the clients' best interests.  These are obligations that arise first and foremost from the contractual

---

[9] Specifically, the Brunos alleged that the insurance company  "was negligent for: delaying and then improperly conducting mold testing of the Bruno home; failing to properly read, interpret, and analyze the test results; delaying the reporting of the test results to the Brunos; failing to recognize and report to the Brunos the danger to their health and to the premises created by the mold; and minimizing the dangers and consequences posed by the mold infestation, when it knew or should have known otherwise." *Bruno*, 106 A.3d at 53.

agreement between the parties, rather than assertions that Defendants performed their contractual

duties in a negligent manner.  Accordingly, the negligence claim is also barred by the gist-of-action

doctrine, and it is dismissed. [10]

       Finally, this Court addresses Plaintiffs' contention that it is inappropriate to dismiss these

claims pursuant to the gist-of-the-action doctrine at the pleading stage, as Plaintiffs are permitted

to plead causes of action in the alternative.  *See* Pls.' Br. (ECF No. 44) at 10 n.7.  As discussed

*supra*, a fair reading of the First Amended Complaint reveals that Plaintiffs' claims derive first

and foremost from the Agreements, or the contracts, entered into between the parties.  Where this

is the case, it is appropriate for a court to dismiss tort causes of action pursuant to the gist-of-the-

action doctrine at the pleading stage.  *See Cunningham Lindsey U.S., Inc. v. Bonnani*, No. 2014

WL 1612632, at *8 (M.D. Pa. 2014) ("Many courts have applied the gist of the action doctrine at

the Rule 12 stage when, as here, it is unequivocal that the gist of the parties' claim is contractual,

and the tort claim is collateral").

## IV.    CONCLUSION

---

[10] Because this Court dismisses the negligence claim pursuant to the gist-of-the-action doctrine, it
need not reach the issue of whether this claim should be dismissed because the economic-loss
doctrine also bars this tort claim.  However, this Court does want to address Plaintiffs' argument,
which they raise for the first time in their response to the motion to dismiss, that this Court should
apply an exception to the economic-loss doctrine for this professional negligence claim.  *See* Pls.'
Br. (ECF No. 46) at 13-15.  Pennsylvania does indeed recognize an exception to the economic-
loss doctrine for professional negligence claims.  *See Rapidigm, Inc. v. ATM Mgmt. Servs., LLC*,
63 Pa. D. & C.4th 234, 240 (Com. Pl. 2003) ("Under settled Pennsylvania case law, a client may
bring both a contract action and a tort action against a professional based on allegations that he or
she failed to provide the client with professional services consistent with those expected of the
profession.").  Courts have not limited the list of professionals for which this exception applies to
those set forth in Pennsylvania Rule of Civil Procedure 1042.1 (setting forth specific licensed
individuals including certain healthcare workers, accountants, architects, chiropractors, dentists,
nurses, pharmacists, physical therapists, psychologists, veterinarians, and attorneys). *See Sherman
v. John Brown Ins. Agency Inc.*, 38 F. Supp. 3d 658, 664 (W.D. Pa. 2014) (holding "that Pa. R.
Civ. P. 1042.1 does not preclude the assertion of a professional negligence claim against insurance
brokers").  However, neither Pennsylvania nor federal courts have expanded the list to include a
wealth manager or investment advisor.

Based on the foregoing, Defendants' motion to dismiss is granted. Because Plaintiffs have already had the opportunity to amend their complaint with respect to these causes of action, this Court concludes that any further opportunity to amend would be futile. *See SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 74 (D. Del. 2020) (denying plaintiff leave to amend where it already "had two opportunities to plead its claims (including once after seeing Defendants' motion to dismiss), and it would be unfairly prejudicial to permit it yet another chance to do so"). Accordingly, Plaintiffs' causes of action for breach of fiduciary duty and negligence are dismissed with prejudice. An appropriate Order follows.

Dated: November 30, 2021                    .                    BY THE COURT:

                                                                 s/ Cynthia Reed Eddy

                                                                 Chief United States Magistrate Judge

cc:      Counsel of record
         *via electronic filing*