IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| STEPHEN WALDEN, LESLIE WALDEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; | ) ) ) ) ) | Civil Action No. 2:20-cv-01972-CBB |
| Plaintiffs, | ) ) ) | United States Magistrate Judge Christopher B. Brown |
| vs. | ) ) | |
| THE BANK OF NEW YORK MELLON CORPORATION, BNY MELLON, N.A., | ) ) ) | |
| Defendants. | ) ) ) ) | |

**MEMORANDUM OPINION[1]
ON ECF No. 180**

**Christopher B. Brown, United States Magistrate Judge**

### I.    Introduction

This putative class action was initiated in this Court on December 21, 2020,

by Plaintiffs Stephen and Leslie Walden (collectively "the Waldens"), individually

and on behalf of those similarly situated, against Defendants Bank of New York

Mellon Corporation and BNY Mellon, N.A. (collectively "BNY Mellon").  The

Waldens generally assert breach of contract claims and claims under the

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

1 *et seq.* ("UTPCPL") in connection with investment management services BNY Mellon provided to the Waldens as a fiduciary and the putative class under investment management agreements.

Presently before the Court is a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) by BNY Mellon. ECF No. 180. The motion is fully briefed and ripe for disposition. ECF Nos. 181, 185, 188.

For the reasons that follow, BNY Mellon's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.

## II.    Background

The Waldens allege that BNY Mellon breached the investment management agreements and violated the UTPCPL by failing to disclose certain conflicts of interest involved with BNY Mellon investing the Waldens' funds in BNY Mellon-affiliated mutual funds. BNY Mellon seeks dismissal on the basis that the Securities Litigation Uniform Standards Act, 15 U.S.C.§ 78bb(f)(1) ("SLUSA") bars the putative class claims. Because BNY Mellon's argument for dismissal is limited to the application of SLUSA, only the background necessary to resolve this issue will be recounted.

Generally, SLUSA deprives a federal court of jurisdiction to hear class actions based on state law alleging a defendant made a misrepresentation or omission in connection with the purchase or sale of covered securities. 15 U.S.C. § 78bb(f)(1). BNY Mellon originally moved to dismiss the Waldens' class claims arguing that they were barred by SLUSA. The Court disagreed and concluded that

SLUSA did not preempt the Waldens' claims because they had alleged that BNY Mellon breached its duties by (1) purchasing BNY Mellon Securities, (2) failing to make individualized and prudent investment decisions, and (3) using a predetermined program that preferred underperforming affiliated funds and that such claims sounded in breach of contract and fiduciary rather than a material misrepresentation about a security transaction. ECF No. 35 at 8. Specifically, the Court recounted the Waldens' claims including that BNY Mellon had breached the investment agreements and violated the UTPCPL by using the Waldens' funds to purchase "BNY Mellon Securities," purchasing BNY Mellon Securities "while operating under an undisclosed conflict of interest" and using a predetermined program that "preferred underperforming, conflicted, affiliated funds that charged excess fees and underperformed other, non-conflicted investment options, rather than making individualized and prudent investment decisions on its clients' behalf[,]" ECF No. 35 at 8, and found that SLUSA did not preempt these claims. The Court found that the Waldens were "alleging that [BNY Mellon] purchased affiliated funds, and benefitted from those purchases, in violations of both their fiduciary duty to [the Waldens] and an agreement not to purchase those funds[]" and as such, were not material misrepresentations in connection with the securities transactions as required for SLUSA preemption. ECF No. 35 at 8.

After a period of discovery, the Court partially granted summary judgment in favor of BNY Mellon on the Waldens' allegations that BNY Mellon breached contracts or violated the UTPCPL by purchasing BNY Mellon Securities or by

failing to make individualized and prudent investment decisions by using a predetermined program that preferred underperforming affiliated funds because the Waldens seemingly abandoned those claims. ECF No. 178 at 23-25. The Court partially denied summary judgment finding that there was sufficient evidence that a reasonable jury could conclude that BNY Mellon failed to disclose potential conflicts of interest by BNY Mellon investing in affiliate mutual funds.[2] ECF No. 178 at 20-21.

After the Court issued its decision on the motion for summary judgment, at the hearing on the pending class certification motion, the Waldens confirmed they intend to proceed solely on the grounds that BNY Mellon had a duty to act as a fiduciary under the investment agreement and breached the investment agreement and violated the UTPCPL by failing to disclose conflicts of interest to the Waldens by purchasing BNY Mellon-affiliate funds for its discretionary customer accounts.[3] BNY Mellon filed the instant motion to dismiss for lack of subject matter jurisdiction arguing that the Waldens' narrowed claim related to undisclosed conflicts was not an allegation the Court previously relied upon in denying BNY

---

[2]    According to the Waldens, BNY Mellon failed to disclose that it had a financial incentive to allocate clients' funds to affiliated funds because of higher fees it charged in connection with affiliated funds, it invested clients' funds using a pre-approved set of investments referred to as the "Solutions Matrix" which heavily favored affiliated funds, it incentivized their employees to select affiliate funds through the employee's compensation structure, and it had a financial incentive to allocate clients' cash balances to BNY Mellon bank accounts rather than money market funds through the fees it charged. ECF No. 178 at 13, 20.

[3]    The motion for class certification and a discrete damages issue related to the disgorgement of fees on summary judgment remain pending.

4

Mellon's SLUSA argument at the motion to dismiss stage and raises those arguments now. ECF No. 181 at 2.

### III.    Standard of Review

Motions seeking class preemption under SLUSA are jurisdictional and Fed. R. Civ. P. 12(b)(1) applies to such challenges. *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009).  Where, as here, the defendant attacks "the factual allegations of jurisdiction, the courts are not limited in their review to the allegations of the complaint.  Any evidence may be reviewed and any factual disputes resolved regarding the allegations giving rise to jurisdiction as it is for the Court to resolve all factual disputes involving the existence of jurisdiction." *Leuthe v. Off. of Fin. Inst. Adjudication*, 977 F. Supp. 357, 359 (E.D. Pa. 1997), *aff'd*, 162 F.3d 1151 (3d Cir. 1998).  The plaintiff bears the burden of proving that jurisdiction exists, and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case, and no presumptive truthfulness attaches to the plaintiff's allegations." *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016) (cleaned up).  Jurisdictional statutes, including SLUSA, must be interpreted "to effectuate the intentions of Congress[.]" *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1510 (3d Cir. 1996).  A finding that SLUSA preemption applies means that the lawsuit may not be maintained as a class action, and "does not adjudicate against any plaintiff the right to recover on the claim." *Knopick v. UBS Fin. Services, Inc.*, 121 F. Supp. 3d 444, 456 (E.D. Pa. 2015) (quoting *In re Kingate Mgt. Ltd. Litig.*, 784 F.3d 128, 135 n. 9 (2d Cir. 2015)).

## IV.    Discussion

### a.  Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb ("SLUSA") – the Legal Standard

In the wake of the Wall Street Crash of 1929 and resulting Great Depression, Congress enacted the Securities Act of 1933 and the Securities Exchange Act of 1934 to regulate the securities industry. *See e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006) ("*Dabit*"). In enacting this legislation, Congress allowed aggrieved investors to assert private causes of action for alleged securities violations under state common law in both state and federal courts – a system which persisted for sixty years. *See N. Sound Capital LLC v. Merck & Co., Inc.*, 938 F.3d 482, 487 (3d Cir. 2019). Congress revisited "this dual system of remedies" and in 1995 enacted the Private Securities Litigation Reform Act ("PSLRA") to curb the "perceived abuses" of federal class-action securities litigation by imposing special requirements and obstacles on claimants filing such actions. *Id*; *Dabit*, 547 U.S. at 81. The provisions of the PSLRA only governed "securities claims brought under federal law in federal court." *N. Sound Capital LLC*, 938 F.3d at 487. After the PSLRA was enacted, claimants responded by avoiding the federal forum altogether and instead brought previously rare securities-based class actions under state law in state forums instead.[4] *Id*. at 82. In 1998, Congress sought to close the

---

[4]    Under the prevailing diversity jurisdiction rules at the time, these suits could not be removed to federal court. *N. Sound Capital LLC*, 938 F.3d at 487.

gap by enacting SLUSA, which imposes limits on the ability to bring certain class actions for securities litigation in both state and federal courts, so that aggrieved investors would instead have to bring their claims as a federal securities fraud class action. 15 U.S.C. § 78bb(f)(1); *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 251 (3d Cir. 2009) (noting the heightened pleading requirements for securities fraud claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and SEC Rule 10b–5).

SLUSA provides in pertinent part:

No covered class action based upon statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –

(A) a misrepresentation or omission of material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).  In other words, "SLUSA deprives a federal court of jurisdiction to hear (1) a covered class action (2) based on state law claims (3) alleging that the defendant made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security." *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1050 (9th Cir. 2019) (cleaned up).  If a claim depends on the "nondisclosure of material facts[,]" under SLUSA, such claims must exclusively "proceed under the federal securities laws[.]"

*Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 929–30 (7th Cir. 2017) (citing *Dabit*, 547 U.S. 71).

Under SLUSA, the court must determine whether a "reasonable reading of the complaint evidences allegations of 'a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security.'" *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304 (3d Cir. 2005) (citing § 78bb(f)(1)). The court must scrutinize the pleadings "to arrive at the 'essence' of a state law claim, in order to prevent artful drafting from circumventing SLUSA preemption." *Rowinski*, 398 F.3d at 301 (citations omitted). Courts must also broadly construe SLUSA's provisions in accordance with Congressional intent. *Dabit*, 547 U.S. at 86.

### b. Law of the Case Doctrine

Before addressing the merits of BNY Mellon's argument that class treatment of the remaining claim is preempted by SLUSA, the Court must address the Waldens' argument that this Court's initial decision on the motion to dismiss that SLUSA did not preclude the Waldens' claims prohibits reconsideration of that argument under the law of the case doctrine.

The law of the case doctrine "prevents reconsideration of legal issues already decided in earlier stages of a case[,]" *Bedrosian v. IRS*, 42 F.4th 174, 181 (3d Cir. 2022), and applies only to issues "expressly" or "necessarily resolved" by prior decisions in the same case. *PDX N., Inc. v. Commr. New Jersey Dept. of Lab. and Workforce Dev.*, 978 F.3d 871, 881 n.10 (3d Cir. 2020). At the motion to dismiss

stage, the Court previously held that the Waldens' claims were not precluded by SLUSA because the misrepresentations alleged by the Waldens sounded in breach of contract or breach of fiduciary duty rather than being material misrepresentations about securities transactions. *See* ECF No. 35 at 7-8 ("the Plaintiffs are alleging that Defendants purchased affiliated funds, and benefitted from those purchases, in violation of both their fiduciary duty to Plaintiffs and an agreement not to purchase those funds."). In so finding, the Court referenced the Waldens' complaint that asserted that it was a breach of contract for BNY Mellon to purchase securities "while operating under an undisclosed conflict of interest." *Id.* at 8. While the Court referenced the Waldens' undisclosed conflicts of interest theory, it did not squarely consider the types of conflicts of interest that discovery has since revealed, and this issue is not settled under the law of the case doctrine. Much of the Court's prior decision was anchored on the Waldens' (now abandoned) claims that it was a breach of contract or fiduciary duty for BNY Mellon to invest in affiliate mutual funds, and that BNY Mellon breached its fiduciary duty through imprudent investment decisions. *Id.* at 8.

Even if the Court had squarely addressed this issue, the law of the case doctrine does not prevent a court from revisiting a prior ruling based on subject matter jurisdiction. *See e.g.*, *Council Tree Commun., Inc. v. F.C.C.*, 503 F.3d 284, 292 (3d Cir. 2007). Therefore, the Court can consider BNY Mellon's SLUSA preemption argument for the separate reason that SLUSA preclusion is jurisdictional, and this Court has a constant duty to assure itself of its subject

matter jurisdiction at all stages of the litigation. *Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005).  Litigation has progressed and discovery may have revealed that SLUSA preempts class treatment of the remaining claim, and there is no basis under the law of the case doctrine, or any other legal basis, to not consider this issue.  Therefore, the Court will address the merits of BNY Mellon's SLUSA preclusion argument.

### c.  SLUSA Application to the Waldens' Class Claims

BNY Mellon seeks dismissal of the Waldens' class claims arguing that the only remaining claim in this case is whether BNY Mellon failed to disclose conflicts of interest created by BNY Mellon investing in affiliate funds, and this conduct is precluded from class treatment under SLUSA.

Again, SLUSA bars state-law based class claims that allege a misrepresentation or omission of material fact that is made "in connection with the purchase or sale" of a covered security. 15 U.S.C. § 78bb(f)(1).  It is undisputed that this case involves a covered class action based on state law claims that involve mutual funds which are covered securities under SLUSA.  Therefore, these requirements are met and the Court will address the remaining two requirements of (1) whether BNY Mellon made a misrepresentation or omission; (2) in connection with the purchase or sale of the mutual funds.

### Omission of Material Fact

BNY Mellon argues the Waldens' claim that BNY Mellon failed to fully disclose conflicts when it bought affiliate products in its discretionary customer accounts was an "omission of material fact" and therefore barred under SLUSA.  It

does not appear the Waldens address this argument.[5]  Nevertheless, BNY Mellon is correct that the Waldens' claim involves an omission of material fact under SLUSA.

Preemption under SLUSA "does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another." *Rowinski*, 398 F.3d at 300.  The crux of the Waldens' claim is that BNY Mellon, acting as a fiduciary, failed to disclose conflicts of interest before it invested client funds in BNY Mellon-affiliated mutual funds. *See* ECF No. 184 at 8 ("BNY's failure to disclose conflicts of interest creates potential contractual and UTPCPL liability because BNY made a promise to [the Waldens] to be a faithful fiduciary in account agreements, which imposed a duty on BNY to disclose conflicts.").  Failing to disclose a conflict of interest is a material omission under SLUSA and further serves as the factual predicate of the Waldens' breach of contract and UTPCPL claims. *See Rowinski*, 398 F.3d at 300 (finding an investment firm's dissemination of biased and materially misleading investment research that artificially inflated the ratings and analysis of its investors was a material misrepresentation under SLUSA, especially where the misrepresentation served as a factual predicate of the claims at issue).  *See also Holtz*, 846 F.3d at 929–30 ("securities claims that depend on the nondisclosure of material facts must proceed under the federal securities

---

[5]     The Waldens take issue with the materiality of the nondisclosure insofar as materiality is relevant to considering whether the omission was made "in connection with" the purchase or sale of a security under *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 380 (2014) ("*Troice*").  That discussion is set forth below.

laws exclusively."). Accordingly, the Waldens' claims involve an omission of material fact and this requirement is met.

### "In Connection with the Purchase or Sale" of a Covered Security

Turning to the "in connection with" the purchase or sale of a covered security requirement, this issue is less straightforward. The Waldens maintain they did not make decisions regarding specific securities transactions and delegated investment decisions to BNY to manage their investments. ECF No. 184 at 14-16. They therefore argue the nondisclosure of conflicts was not made in connection with the sale or purchase of the mutual funds and was not material to a decision by the Waldens to buy or sell securities. *Id*. BNY Mellon disagrees and argues that the undisclosed conflicts of interest when buying affiliated mutual funds is necessarily in connection with the purchase or sale of a covered security. ECF No. 181 at 11-15.

The United States Supreme Court has considered the "in connection with" element of SLUSA in two opinions: *Dabit*, 547 U.S. 71 and *Troice*, 571 U.S. 377. In *Dabit*, the Supreme Court was asked to determine whether an investment bank acted "in connection with" the purchase or sale of securities under SLUSA when it disseminated misleading research and fraudulently manipulated stock prices. 547 U.S. at 75. The Supreme Court adopted a "broad construction" of SLUSA finding that it is "enough that the fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or by someone else[,]" and found that this conduct fell within SLUSA's ambit and was preempted. *Id*. at 85.

Thereafter, in *Troice*, the Supreme Court was again asked to weigh in on the "in connection with" SLUSA requirement. In *Troice*, the plaintiffs were victims of a

multi-billion-dollar Ponzi scheme and purchased certificates of deposit (CDs) from Stanford International Bank ("Bank").  The CDs were "debt assets that promised a fixed rate of return" and not "covered securities" under SLUSA, but the victims were told the Bank would use the money to invest in "highly lucrative assets." 571 U.S. at 384.  Instead, the Bank used the money to pay old investors, finance an elaborate lifestyle and finance real estate ventures. *Id*.  The Supreme Court was asked to determine whether the Bank in selling the CDs to the plaintiffs acted in connection with the purchase or sale of securities by representing that the CDs were invested in covered securities. *Id*. at 386-87.  The Supreme Court concluded that it did not, finding that the CD purchase did not involve a transaction of covered securities, and the promise to invest the proceeds from the purchase of CDs was not a "material" connection to the purchase or sale of a covered security. *Id*. at 387-88. The Supreme Court found "[a] fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or sell a 'covered security.'" *Id*. at 387.  It further explained "the 'someone' making that decision to purchase or sell must be a party other than the fraudster.  If the only party who decides to buy or sell a covered security as a result of a lie is the liar, that is not a 'connection' that matters." *Id*. at 388.  It noted that "a misrepresentation or omission is 'material' if a reasonable investor would have considered the information significant when contemplating a statutorily relevant investment decision." *Id*. at 388.  The Supreme Court found that SLUSA did not

preempt the plaintiffs' claims because the plaintiffs rested their claims "upon their purchases of uncovered, not of covered, securities[,]" and the Bank's assurances that the Bank invested its own assets in safe and stable securities did not bring the claims within the scope of SLUSA. *Id*. at 395-96. The Supreme Court further found that alleged misrepresentations "about the Bank's ownership of covered securities – fraudulent assurances that the Bank owned, would own, or would use the victims' money to buy for itself shares of covered securities[,]" did not meet the "in connection with the purchase or sale of securities" element of SLUSA because the Bank was the fraudster, not the fraudster's victim, and was not "some other person transacting (or refraining from transacting), . . . in covered securities." *Id*. at 396-97. It also expressly indicated that its decision did not modify its previous decision in *Dabit*. *Id*. at 397.

Following these two decisions, the Court of Appeals for the Third Circuit was also asked to weigh in on the "in connection with the sale or purchase of securities" requirement in *Taksir v. Vanguard Grp.*, 903 F.3d 95 (3d Cir. 2018). The Third Circuit found that while the Supreme Court in *Troice* made the fact that the case involved the purchase of uncovered securities "centrally relevant" to its decision, it "did not limit its reasoning to the uncovered/covered distinction" and found *Troice* applicable in determining whether the connection at issue is a "connection that matters." 903 F.3d at 97-98. The Third Circuit found that commission overcharges were not material to the securities transactions and therefore were not preempted by SLUSA. *Id*. at 100. In *Taksir*, Vanguard advertised that it charged $2

14

commissions on trades for customers who maintained a $500,000 minimum account balance. *Id*. at 96. Plaintiffs alleged they maintained the minimum balance, made trades, and were charged a $7 commission for each trade. *Id*. The Third Circuit found that the "single-digit" overcharge was not objectively material to the purchase or sale of securities because "a reasonable investor would not be swayed by the overcharges" when they had "such significant investments[.]" *Id*. at 99. It further found that the overcharged commissions were in contrast to other cases that were preempted by SLUSA that involved the breach of duties in executing trades of covered securities and the fraudulent manipulation of stock prices. *Id*. at 100 (collecting cases).

The Waldens rely heavily on *Troice* and *Taksir*, arguing the "wrongdoing and deception at issue here relates not to a securities transaction, but the terms of the advisory relationship between BNY [Mellon] and [the Waldens] (and the class), [and] SLUSA does not preempt [the Waldens'] claims[.]" ECF No. 184 at 16. The Waldens maintain that *Troice* stands for the proposition that where a plaintiff cedes investment authority to the investor, and the investor acts under this authority, because the plaintiff does not make decisions regarding specific securities transactions, the "in connection with" element of SLUSA is not met. ECF No. 184 at 16-17. The Waldens argue that *Troice* has been applied in other cases which found that "passive investment relationships" and those that involve discretionary investment services fall outside of SLUSA's scope and cite to three cases to support this argument: *Banks*, 929 F.3d 1046, *Bernard v. BNY Mellon, Natl. Assn.*, No. 2:18-

CV-00783-NBF-CRE, 2019 WL 2492293 (W.D. Pa. June 14, 2019), and *Henderson v. Bank of New York Mellon Corp.*, 146 F. Supp. 3d 438, 440–41 (D. Mass. 2015). ECF No. 184 at 17-18. These cases are inapposite to this case, as they all involved a trust-beneficiary relationship where the trustee bought or sold securities on behalf of the trust, and not on behalf of the beneficiary, as opposed to here where the Waldens have alleged an agent-principal relationship where BNY Mellon is alleged to have acted on behalf of the Waldens pursuant to the investment agreements.[6]

In *Banks*, the Court of Appeals for the Ninth Circuit concluded that the "in connection with" requirement was not met where the allegations involved a trustee's imprudent investment decisions of covered securities brought by the beneficiaries of an irrevocable trust because the beneficiaries could not direct the trustee's actions and were unable to purchase or sell covered securities. 929 F.3d at 1052. The Ninth Circuit even distinguished the relationship between a trustee and beneficiary and an agent/stockbroker and principal/investor finding that because "an agent acts subject to the control of his or her principal[,]" and "can revoke control from an agent in the course of their relationship" it is not the same as a trust relationship where "a beneficiary cannot alter the powers of a trustee or remove the trustee without petitioning a court of law." *Id.* at 1052. Therefore, the Ninth Circuit found that under *Troice*, the "in connection with" requirement could

---

[6]     The Investment Management Agreement specifically provides: "Client [the Waldens] appoints Manager [BNY Mellon] to act as Client's agent for the investment and disposition of the securities, money, or other property (the 'Property') held from time to time in such Account(s) and managed in accordance with the terms of this Investment Management Agreement …" ECF No. 17-5 at 3.

not be met because the deceptive or manipulative conduct only resulted in the trustee purchasing or selling covered securities on behalf of the trust and SLUSA did not preempt the beneficiaries' claims. *Id.* at 1052. Likewise, the same issue was decided in *Bernard* and *Henderson*. *See Bernard v. BNY Mellon, Natl. Assn.,* No. 2:18-CV-00783-CRE, 2019 WL 2462606, at *6 (W.D. Pa. Apr. 25, 2019), report and recommendation adopted, No. 2:18-CV-00783-NBF-CRE, 2019 WL 2492293 (W.D. Pa. June 14, 2019) (BNY Mellon was acting as a trustee and purchased or sold covered securities on behalf of the trust and was not a "victim" who transacted in covered securities); *Henderson*, 146 F. Supp. 3d at 443 (finding that a trust beneficiary "powerless to buy or sell covered securities" took no action "in connection with" the purchase or sale of covered securities under SLUSA).

Here, the operative agreements are not trust instruments, but rather discretionary investment management agreements that involve an agency-principal relationship between BNY Mellon and the Waldens. As such, the cases relied on are inapplicable. *See generally* ECF No. 181-1; ECF No. 17-5 at 3.

Additionally, the record reflects that the Waldens were able to exercise control over their investments[7] and they did in fact exercise some control over their investments pursuant to the Agreement. For example, the Waldens specifically assert in their class certification briefing that BNY Mellon's "customers like the

---

[7]    The Investment Management Agreement provides: "[BNY Mellon] will make and implement all investment decisions with respect to the Account in its sole discretion, subject to such Client approval of Manager's investment plan for the Account that Manager may require. Manager will periodically review the Account, purchase, retain and sell securities, monies, financial instruments and other Property, all in accordance with Client's written investment objectives." ECF No. 17-5 at p. 3 § A.1.

Waldens could direct BNY to restrict specific types of instruments." ECF No. 155 at 22. The record also reflects the Waldens exercised this authority on a few occasions – once declining BNY Mellon's investment recommendation and directing BNY Mellon to purchase an affiliate fund and establishing criteria for that purchase, ECF No. 181-2 at 1-7, and once declining BNY Mellon's proposal to sell an affiliate fund in exchange for a non-affiliated fund. ECF Nos. 181-3 at 1-5; 181-4 at 3. The Waldens also restricted BNY Mellon from investing in gun and ammunition manufacturers and had the ability to end the investment relationship. ECF No. 181-8 at 4; ECF No. 17-5 at p. 10 § 8. While the Waldens characterize their control over the investment decisions as a "passive investment relationship," this is belied by the record. Further, this is not a situation where BNY Mellon purchased affiliate funds on behalf of itself, like the fraudster in *Troice*, or on behalf of a trust where a beneficiary exercises no control over the purchase or sale of securities like in *Banks*, *Bernard* and *Henderson*.

The Waldens also argue that under *Troice*, the decision to buy or sell securities must be made by someone "other than the fraudster." They argue that BNY Mellon is the alleged "fraudster" by failing to provide informed consent to its clients by not disclosing conflicts of interest involved with investing in affiliated mutual funds. ECF No. 184 at 14. They argue that because BNY Mellon made the decision to invest in affiliated mutual funds, and the Waldens and putative class did not make any decisions to buy or sell securities, the undisclosed conflicts are not material to a decision to buy or sell securities. *Id*. at 15-16.

18

The Waldens' argument for the application of *Troice* does not square with the facts of this case and has been rejected by other courts who have considered this issue. In *Troice*, the victims purchased uncovered securities (CDs) issued by the Bank, and the Bank represented that it would use those proceeds to invest in covered securities to back the non-covered securities. The Bank did not do so. The Supreme Court found that the misrepresentation was not connected to the purchase or sale of a security because the Bank was the entity that misrepresented that it bought or sold covered securities for itself – not for the victims. Here, BNY Mellon purchased covered securities on behalf of the Waldens pursuant to an investment agreement, not on behalf of itself. Therefore, while *Troice* stands for the proposition that a connection to a covered security transaction must be "material," it does not stand for the proposition that an agent/investment company that exercises some discretion to invest client funds and does so, negates the "in connection" with element of SLUSA because it purchased covered securities on the client's behalf. This is in accordance with several other cases that have considered this issue. *See S.E.C. v. Zandford*, 535 U.S. 813, 822 (2002) (finding that a broker-agent who was given discretion to invest the client's assets in the stock market but instead misappropriated the proceeds of the sales met the "in connection" element for Section 10(b) liability); *Rowinski*, 398 F.3d at 300–301 (applying *Zandford* to a SLUSA issue and finding the "in connection" element under SLUSA is informed by the caselaw of that same standard under Section 10(b) and Rule 10b-5); *Holtz*, 846 F.3d at 933 ("That some of the investment decisions were made by investment

advisers as [plaintiff's] agent does not take this out of the 'in connection with' domain[.]"); *Birchfield v. Empower Advisory Group, LLC*, No. 22-CV-02716-NYW-SKC, 2023 WL 5748378, at *7 (D. Colo. Sept. 6, 2023) (that the defendants "made the actual trading decisions" for the plaintiff "did not change the fact that [p]laintiff was the beneficial owner of all covered securities purchased."); *Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *39 (S.D.N.Y. June 22, 2020) (considering *Troice* and finding "even if the fraudster initiated the purchase, so long as the victim 'maintained an ownership interest' in the securities" SLUSA preemption applies); *Goodman v. AssetMark, Inc.*, 53 F. Supp. 3d 583, 590 (E.D.N.Y. 2014) ("*Troice* does not stand for the broad proposition that SLUSA cannot apply whenever the defendant accused of fraud, instead of the plaintiff, was the one who purchased the covered securities").

Here, it is undisputed that the Waldens maintained ownership in the affiliate funds and their claims are premised upon the nondisclosure of conflicts related to the purchase of those affiliate funds.  That BNY Mellon exercised its discretion to purchase affiliate funds on behalf on the Waldens in accordance with their investment agreement does not negate the "in connection with" requirement under SLUSA.

In a similar case, the Court of Appeals for the Seventh Circuit found that SLUSA preempted claims against JPMorgan Chase Bank ("JPMorgan") who managed clients' portfolios of securities and were alleged to have breached fiduciary duties to its investors by investing in affiliate mutual funds with higher fees and

lower returns than third-party mutual funds. *Holtz*, 846 F.3d at 929. The Seventh Circuit found that because the claims depended on the investors' assertion that JPMorgan concealed incentives it gave its employees for investing in affiliate funds, this "nondisclosure [was] a linchpin" of the claim no matter how investors framed the pleadings. *Id.* at 930. It found that where "one party to a contract conceals the fact that it planned all along to favor its own interest – is a staple of federal securities law. . . . [T]he Bank promised to recommend investments in [the investor's] best interest, while intending all along to make recommendations in its own interest." *Holtz*, 846 F.3d at 932. Therefore, "[a] fiduciary that makes a securities trade without disclosing a conflict of interest violates federal securities law." *Holtz*, 846 F.3d at 932 (citing *In re E.F. Hutton & Co.*, 49 S.E.C. 829 (1988)). The Seventh Circuit noted "[a] statement along the lines of 'we will act in your best interest' plus nondisclosure of a competing private interest is the basis of many securities actions." *Holtz*, 846 F.3d at 932.

The Waldens claim that because BNY Mellon failed to disclose material conflicts of interest related to BNY investing the Waldens' money into affiliate mutual funds, the Waldens (and putative class members) were unable to provide informed consent to BNY Mellon to invest their money into those funds. *See* ECF No. 155 at 15 (BNY Mellon failed "to provide a full and fair explanation concerning the presence of [any] conflict" and "obfuscate[d] actual conflicts to the point where [clients] cannot provide informed consent"). As in *Holtz,* the omissions here were made in connection with and material to a decision to buy or sell securities because

the undisclosed conflicts relate to affiliate funds and were concealed from the

Waldens while their fiduciary BNY Mellon transacted in affiliate funds.  Therefore,

the claim that the Waldens lacked informed consent to allow BNY Mellon to

purchase affiliate funds because of the undisclosed conflicts is material to a decision

to buy or sell covered securities.  The essence of the Waldens' claim is that a

reasonable investor would have considered the undisclosed conflicts and resulting

lack of informed consent significant information when contemplating investing in

affiliate funds.[8]  Despite the Waldens labeling their claims as a contractual breach

of fiduciary duty or as violating the UTPCPL, the claims are indicative of securities

fraud and are preempted by SLUSA. *See Portell v. Zayed*, 375 F. Supp. 3d 1025,

1032–34 (N.D. Ill. 2019) (undisclosed conflicts of interest are preempted by SLUSA

"regardless of the label on the cause of action in which they are included[,]" and an

"undisclosed scheme" to "maximize fees" instead of the "return to investors" is

"intentional conduct that sounds in fraud.").

Additionally, a plaintiff's "theory of damages also bears on the SLUSA 'in

connection' inquiry." *Rowinski*, 398 F.3d at 301, 305. The Waldens maintain that

they have "consistently sought refund of their account fees as the proper remedy."

ECF No. 184 at 12.  At the hearing on the motion for class certification, the

Waldens explained that BNY Mellon "should be required to return the fees and

compensation that they received for being unfaithful fiduciaries" and that "our

damages model simply adds up the fees and compensation paid to BNY [Mellon] by

---

[8]     It is undisputed that the investment management agreements disclosed to the Waldens that
BNY Mellon invested in affiliate mutual funds. ECF No. 178 at 20.

each customer and calls for the return of that amount of money to the customers."
ECF No. 172 at 6:14-17; 16:6-8.   Seeking a refund or disgorgement of account fees
further "connects" the Waldens' allegations to the purchase or sale of securities. *See
Rowinski*, 398 F.3d at 297, 305 (finding that a request for "any and all fees and
charges collected" was one of several factors that supported SLUSA preemption).

Accordingly, the omissions – undisclosed conflicts of interest related to
investing in BNY Mellon-affiliated funds– upon which the Waldens' claims rest are
material to and in connection with the purchase or sale of covered securities and are
preempted by SLUSA.[9]

### Additional argument against preemption

The Waldens make one last argument against a finding of preemption – that
at least one of the undisclosed conflicts are not connected to the purchase or sale of
covered securities. ECF No. 184 at 9.  The Waldens claim that "discovery
uncovered" that BNY Mellon had financial incentives to place "customers' cash
assets into bank accounts" which then "earned fees" for BNY Mellon but was
financially disadvantageous to the customers and BNY Mellon failed to disclose
these incentives. *Id.*  The Waldens argue that bank accounts are not securities and
not preempted by SLUSA. *Id.*  BNY Mellon responds to this argument in a footnote
by stating: "Plaintiffs' belated reliance on an unpled, unsupported theory regarding

---

[9]      This finding does not leave the Waldens without a remedy; they may bring these claims in
their individual capacities or under a federal securities law class action.  They are simply foreclosed
from bringing these state law claims under a federal class action vehicle.

bank accounts is irrelevant, as affiliated mutual funds are covered securities under SLUSA." ECF No. 188 at 4 n.3.

While BNY Mellon is correct that the Waldens' arguments related to the allocation of customer's cash balances into bank accounts and the undisclosed financial incentives to BNY Mellon that flowed therefrom is not included in the amended complaint and considering the Waldens' implicit acknowledgement that these facts were only uncovered through discovery, the Court must also note that these facts have been incorporated into this lawsuit and litigated.  In the Waldens' motion for class certification, they assert that "[t]he contracts fail to disclose . . . incentives to allocate client cash to high fee bank accounts rather than higher return money market funds." ECF No. 106-1 at 9-10.  The Waldens further maintained that BNY Mellon

> had an incentive to allocate its clients' cash balances to BNY Mellon bank accounts rather than affiliated money market funds.  BNY Mellon waived its Investment Management fee or Account fee when investing in Affiliated Funds (including money market funds).  But it did not waive these fees when allocating cash to a BNY [Mellon] bank account.  As a result, [BNY Mellon] earned more money when the placed client cash into bank accounts instead of money market funds.  Clients, however, often earned less money in the bank accounts than they would have earned in money market funds.  In light of this financial incentive, [BNY Mellon] used bank accounts rather than Affiliated Funds for the cash component of Plaintiffs' portfolios.

ECF No. 106-1 at 12-13.

Despite the parties acting as though these allegations have been adequately pleaded, and the Court having referred to these allegations as a basis for finding sufficient evidence of undisclosed conflicts on summary judgment, *see* ECF No. 178 at 14-15; 20-21, this does not change the fact that the Waldens have not included

this theory of liability in their operative pleading.  The Waldens cannot amend their complaint through argument in a brief opposing summary judgment and the proper procedure for a plaintiff to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15. *Nykiel v. Borough of Sharpsburg*, 778 F. Supp. 2d 573, 587 (W.D. Pa. 2011) (collecting cases). And there is no argument for constructive amendment or implied consent of such amendment.  Therefore, the Court makes no determination of whether this specific claim is preempted by SLUSA.  Should the Waldens seek to litigate these claims further, they may file the appropriate motion.

## V.     Conclusion

Based on the foregoing, BNY Mellon's motion to dismiss is **GRANTED** and the Waldens' complaint is dismissed without prejudice.  Should the Waldens seek to amend their complaint to plead individual claims or otherwise, they shall seek leave to submit an amended complaint consistent with the following Order.  Further, the pending motion for class certification ECF No. 106 will be denied as moot, as is the deferred ruling on summary judgment on entitlement to disgorged fees.

An appropriate Order follows.

DATED this 16th day of December, 2024.

BY THE COURT:

s/Christopher B. Brown
United States Magistrate Judge