IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| STEPHEN WALDEN, LESLIE WALDEN,     ) ) ) | |
|             ) | Civil Action No. 2:20-cv-01972-CBB |
|    Plaintiffs,     ) ) | |
|    vs.       ) ) | Christopher B. Brown United States Magistrate Judge |
| THE BANK OF NEW YORK MELLON CORPORATION, BNY MELLON, N.A.,   ) ) ) | |
|    Defendants.     ) ) | |

**MEMORANDUM OPINION[1]
ON MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT ECF No. 191**

**Christopher B. Brown, United States Magistrate Judge.**

## I.  Introduction

This action was initiated on December 21, 2020 by Plaintiffs Stephen and

Leslie Walden (collectively "the Waldens"). The Waldens sought to maintain a class

action against Defendants Bank of New York Mellon Corporation and BNY Mellon,

N.A. (collectively "BNY") for breach of contract and claims under the Pennsylvania

Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et*

*seq.* ("UTPCPL"). This matter centers on investment management services BNY

---

[1]   All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

Mellon provided to the Waldens and the putative class as a fiduciary under investment management agreements.

In December 2024, the Court granted BNY's motion to dismiss the Waldens' class claims for lack of subject matter jurisdiction, finding the treatment of the Waldens' claims as a class were preempted by the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb(f)(1) ("SLUSA"). ECF No. 189.  In that decision, the Court found the Waldens raised a novel theory of liability and facts in support which they had not included in their operative pleading. *Id.* at 24-25.  The Court informed the Waldens that should they want to advance this novel theory, they could file a motion requesting leave to amend their complaint, or, in the alternative, they could file a notice that they intended to proceed with their claims against BNY in their individual capacities. *Id.* at 25; ECF No. 190 at 1-2.  The Waldens chose the first option, and timely filed the present motion for leave to file a second amended complaint. ECF No. 191.  BNY opposes the motion, and it is fully briefed and ripe for consideration. ECF Nos. 192, 194, 196, 203.

For the reasons that follow, the Waldens' motion for leave to file a second amended complaint is denied.

## II.    Background

Because the Court writes primarily for the parties, only the factual background necessary to resolve the instant motion is discussed.

The Waldens contracted with BNY to provide them with investment management services under a fiduciary standard.  The Waldens' original complaint

alleged BNY breached their contracts, fiduciary duties, and violated several state laws by investing client assets into BNY-affiliated mutual funds and sought class treatment of their claims. ECF No. 35 at 2-3. By doing so, the Waldens claimed BNY and its employees received additional fees and compensation which was, *inter alia*, a breach of BNY's fiduciary duty because the affiliated investments created a conflict of interest which should have been disclosed to the Waldens, but were not. *Id*. The Court granted in part and denied in part BNY's motion to dismiss the original complaint, and the Waldens filed the operative amended complaint on June 28, 2021. ECF No. 40. The amended complaint again sought to proceed as a class and again focused on BNY's failure to disclose conflicts of interest for investing client assets in BNY-affiliated mutual funds as well as for failure to disclose that BNY used a predetermined program to make investment decisions that preferred underperforming affiliated funds instead of making individualized investment decisions on its clients' behalf. ECF No. 40 at ¶ 50; ECF No. 48 at 2-3.

After a second round of motions to dismiss, the Court dismissed some of the Waldens' claims, and the parties began class discovery on the remaining claims for breach of contract and violations of state law consumer protection laws related to BNY's alleged failure to disclose these conflicts of interest. ECF Nos. 48, 57. The Court also imposed a deadline of March 1, 2022 for the parties to amend their pleadings. ECF No. 89. The Waldens never moved to amend their complaint before this deadline.

More than one year later, on July 31, 2023 and following the close of class

discovery, BNY filed a pre-class motion for summary judgment and on its heels, the

Waldens filed a motion for class certification.[2] ECF Nos. 98, 106.  The Waldens'

motion for class certification included a class definition that varied from the one set

forth in their amended complaint.  The Waldens sought to certify, for the first time,

a sub-class of individuals who deposited cash into BNY bank accounts and whose

assets were placed in cash sweep accounts despite their amended complaint having

no facts suggesting they intended to proceed with class claims related to BNY's

practices related to cash sweep accounts. *Compare* ECF No. 40 at ¶ 106 *with* ECF

No. 106 at ¶ 1.[3]  Nevertheless, the Waldens argued in their motion for class

---

[2]      The Court held the motion for class certification in abeyance pending the decision on BNY's
motion for summary judgment. ECF No. 160; ECF No. 178 at 17.

[3]      Specifically, the Waldens defined the putative class in their amended complaint filed on June
28, 2021 as follows:

> 106.    Plaintiffs seek to represent the following class ("the Class"):
>
> All persons or entities, for whom: (a) BNY Mellon had investment discretion over
> assets that they provided to the Bank, pursuant to an investment advisory
> agreement or similar agreement; and (b) BNY Mellon used its discretionary
> authority to invest in investment vehicles that were financially affiliated with
> BNY Mellon or BNY Corp.

ECF No. 40 at ¶ 106.  By comparison, the Waldens defined the putative class in their motion for
class certification filed on July 31, 2023 as follows:

> (1)      Certifying this action as a class action pursuant to Rules 23(a), 23(b)(2), and
>
> 23(b)(3) of the Federal Rules of Civil Procedure, for a class defined as:
>
> All persons who, or entities that, during the period 2014 to the present (the "Class
> Period"), contracted with BNY Mellon to receive investment advice for their
> investment assets and for whom BNY Mellon used its discretionary authority to
> purchase, or recommended, or otherwise caused, the purchase of, investment fund
> vehicles that were financially affiliated with BNY Mellon or BNY Corp. or the
> deposit of cash into bank accounts at BNY Mellon or related banks.[1]

certification that along with their original breach of fiduciary legal theories, BNY also breached its fiduciary duties by placing its clients' cash balances into BNY-owned cash sweep accounts which had higher fees and lower interest rates compared with other investment options – like investing in affiliated money market funds where such fees are waived – BNY and its employees financially benefitted from this allocation, and BNY failed to disclose it placed cash balances into the cash sweep accounts to its clients (the "cash sweep account theory."). *See* ECF No. 106-1 at 12-13.   This appears to be the first time the Waldens introduced the cash sweep account theory to the Court and their amended complaint does not appear to include facts suggesting they intended to allege any claims related to BNY's use of cash sweep accounts.

BNY filed its motion for summary judgment the same day as the Waldens filed their class certification motion first raising the cash sweep account theory and thus BNY did not address the newly raised cash sweep account theory in its request for summary judgment. ECF No. 100.  However, in its response to the Waldens' class certification motion filed in September 2023, BNY argued the Waldens had not pleaded the cash sweep account theory in their amended complaint and construed this novel claim as inconsistent with the Waldens' original theory of the case that BNY breached duties by investing in affiliate mutual funds. ECF No. 125 at 30 n. 6. The Waldens similarly incorporated its cash sweep account theory into its response to BNY's summary judgment motion. ECF No. 152 at 6; 18-19.

---

ECF No. 106 at ¶ 1 (adding language to the class definition to include "deposit of cash into bank accounts" at BNY).

While both motions were pending, the Court held oral argument on the class certification motion on March 21, 2024. ECF No. 171.  At oral argument, the Waldens confirmed they intended to proceed solely on the grounds that BNY breached its fiduciary duties and violated state law by failing to disclose it was a conflict of interest for it to invest client assets in BNY-affiliated mutual funds.[4] ECF No. 172 at p. 3: 16-22; p.6: 1-7; p. 8: 9-12; 20-24.  The Waldens also mentioned the cash sweep account theory at oral argument, characterizing it as an issue "discussed in the papers" but one they had not "spend much time talking with the court about before," or had given the Court "an opportunity to focus on before" and as "not something we have really highlighted in the case before[.]" ECF No. 172 at p. 12:20-25; 13:1-25; 15:9-14.  BNY maintained its position at oral argument that the Waldens failed to plead this cash sweep account theory and that the theory was inconsistent with the Waldens' original theory of the case. *Id*. at p. 31:6-25; 32:1-6.

On April 10, 2024, the Court then issued a decision granting in part, deferring in part and denying in part BNY's summary judgment motion.  In its decision, the Court denied summary judgment related to, *inter alia*, the cash sweep account theory but did not address whether it had been properly raised. ECF No. 178 at 20, 21, 34.

---

[4]     The Court later found in its decision on BNY's summary judgment motion that the Waldens' abandoned their claims that BNY breached the investment agreements or violated state law by purchasing BNY Securities for their clients, and abandoned their claims that BNY breached the investment agreements by failing to make individualized assessments of the Waldens' financial needs by using a predetermined program to make investment decisions and that program preferred underperforming and conflicted affiliated funds that charged excess fees and underperformed other non-affiliated investment options. ECF No. 178 at 23-25.

On April 29, 2024, upon learning at the class certification oral argument that the Waldens abandoned several of its original claims related to BNY's alleged underperformance and imprudent investment decisions and instead narrowed the focus of their claims upon whether BNY failed to disclose conflicts of interest, BNY moved to dismiss the Waldens' class claims on the basis that the Court lacked subject matter jurisdiction to consider those claims under the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb(f)(1) ("SLUSA"). ECF Nos. 180; 181 at 2-3. BNY argued these remaining failure-to-disclose claims involved misrepresentations or omissions of material facts made in connection with the purchase or sale of a covered security, fell within SLUSA's preemption and class treatment of these claims was barred. *See* ECF No. 181.  During that briefing, the Waldens reasserted their cash sweep account theory arguing SLUSA did not preempt those claims from class treatment because placing clients' assets into bank accounts did not involve trading securities. ECF No. 184 at 9.  The Court agreed with BNY that the Waldens' class claims related to BNY's failure to disclose conflicts of interest for investing in affiliated mutual funds involved a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security and were preempted by SLUSA. ECF No. 189.  The Court did not address the Waldens' argument that their cash sweep account theory was not barred by SLUSA finding they had not pleaded that theory in their amended complaint, and it was not properly before the Court.  *Id.* at 23-25.  In granting BNY's motion to dismiss the Waldens' class claims for lack of subject matter jurisdiction, the Court denied the

Waldens' pending motion for class certification as moot. ECF No. 190. The Court informed the Waldens if they sought "to litigate [the cash sweep account] claims further, they may file the appropriate motion." ECF No. 189 at 23-25. The Waldens took that opportunity and filed the present motion for leave to file a second amended complaint on January 31, 2025. ECF No. 191.

### III.  Discussion

#### a.  Expanding Theories of Liability Through a Modified Class Definition

As an initial matter, the Waldens fundamentally expanded their theories of BNY's liability by asserting their cash sweep theory as part of their modified class definition. While the parties did not address the impact of the Waldens proposing a broader class definition in their class certification motion from what was pleaded in their amended complaint, because the Waldens first included this new legal theory in their amended class definition, the Court believes this topic merits discussion.

Courts in this circuit are not bound by the class definition proposed in a complaint and enjoy significant discretion to amend a class definition *sua sponte* to assure proper certification and administration of the class. *Weisfeld v. Sun Chem. Corp.*, 84 F. App'x 257, 259 (3d Cir. 2004)(unpublished). Similarly, a plaintiff is not prevented from redefining a putative class from what was originally pleaded to meet the needs of the case. *Deutsch v. My Pillow, Inc.*, No. 20CV00318SRNECW, 2023 WL 3125549, at *31 (D. Minn. Apr. 27, 2023); *Johansson v. Nelnet, Inc.*, No. 4:20CV3069, 2022 WL 6232089, at *5 (D. Neb. July 21, 2022), *report and*

*recommendation adopted*, No. 20-CV-3069, 2022 WL 6149989 (D. Neb. Oct. 7, 2022);

*In re Homaidan*, 640 B.R. 810, 867 (Bankr. E.D.N.Y. 2022).

But, when a modified class definition seeks to expand, instead of narrow, the scope of a putative class by adding more putative class members, new causes of action or claims not included in the complaint, courts may limit that practice where expansion would unfairly prejudice a defendant. *Douglas v. EF Inst. for Cultural Exch., Inc.*, No. 20-CV-11740-DJC, 2024 WL 3070251, at *4 (D. Mass. June 20, 2024) (collecting cases). Courts have found defendants are unfairly prejudiced by an expanded class definition where it would result in a lack of notice to defendants regarding the nature and scope of the claims asserted, and where discovery has already been conducted. *See Douglas*, 2024 WL 3070251, at *5 (refusing to expand class definition where the expanded definition was "broader with respect to the alleged scope of [d]efendants' liability"); *Rivera v. Invitation Homes, Inc.*, No. 18-CV-03158-JSW, 2022 WL 504161, at *4 (N.D. Cal. Feb. 18, 2022) (refusing to allow plaintiffs to include a new theory of liability in a class definition because defendant "has not had sufficient notice of this theory of liability" and "the length of time this case has been pending" when the "Plaintiff's allegations and arguments have focused [on a different theory of liability]"); *Smith v. Seeco, Inc.*, No. 4:15CV00147 BSM, 2016 WL 3541412, at *3 (E.D. Ark. Mar. 11, 2016) (not allowing an expanded class definition where parties conducted months of discovery and submitted expert disclosures); *Vincent v. Money Store*, 304 F.R.D. 446, 453 (S.D.N.Y. 2015) (refusing to consider an expanded class definition "without any motion to amend the

[c]omplaint" and even if additional discovery was not necessary, the modified class

definition improperly expanded the class to include members whose claims were

untimely and prejudiced defendants); *Bouton v. Ocean Props., Ltd*, 322 F.R.D. 683,

693 (S.D. Fla. 2017) (not permitting an expanded class definition noting that

"[a]lthough a plaintiff may seek to certify a class definition narrower than the one

proposed in the operative pleading without a new claim for relief, the converse is

not allowed") (emphasis omitted).  Simply stated, "[c]lass certification is not a time

for asserting new legal theories that were not pleaded in the complaint." *Brown v.*

*Am. Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011).

The Waldens impermissibly expanded their class definition by first

presenting their unpleaded cash sweep account theory of liability in their motion for

class certification.  While BNY may have had notice of the cash sweep account

theory because the Waldens mentioned it in their expert report and BNY deposed

the Waldens' expert on this theory, *see infra* n. 8, it remains that this legal theory

contradicts the Waldens' theory of the case from its inception – which is that BNY

breached its fiduciary duties to its clients when it invested their assets in affiliated

mutual funds and is grounded in new unpleaded claims. *See infra* pp. 16-18.  Given

that discovery is often broader than the claims and defenses actually litigated, Fed.

R. Civ. P. 26(b)(1) ("discovery need not be admissible in evidence to be

discoverable"), BNY cannot be said to have had fair notice of this theory until the

Waldens first unmistakably placed it into litigation through their expanded class

definition in their motion for class certification, and likewise cannot be said to have

waived any defense by performing a comprehensive deposition on all grounds raised in an expert report.  Ultimately, the cash sweep theory of liability was not pleaded in the amended complaint.  Even if the Court were to construe the Waldens' cash sweep theory in the context of whether to allow an expanded class definition, because this is a novel legal theory of liability that impermissibly expands the class definition, it is improper to do so by simply redefining the class.  Instead, the Waldens must move to amend their complaint to include such a claim and are subject to the standards set forth in Fed. R. Civ. P. 16 and 15 for doing so.

### b.  Fed. R. Civ. P. 16

Fed. R. Civ. P. 16(b)(4) controls the court's authority to enter scheduling orders and provides: "[a] schedule may be modified only for good cause and with the judge's consent."  This applies to deadlines set by the court for the parties to amend pleadings and this "good cause" standard insures "that at some point . . . the pleadings will be fixed[.]" Fed. R. Civ. P. 16, Advisory Committee Note (1983).  Similarly, Fed. R. Civ. P. 15(a)(2) controls a party's ability to amend pleadings and provides: "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

The Waldens maintain that "[d]iscovery revealed that one such breach of BNY's fiduciary duties involved BNY placing customers' cash into BNY-owned cash sweep accounts – bank accounts that earned fees for BNY from [the Waldens] and otherwise benefitted [BNY].  BNY placed customer cash into BNY-owned bank

accounts creating a financial benefit for [BNY] and their employees.  BNY never disclosed this conflict of interest to [the Waldens] and BNY's self-dealing caused [the Waldens] to suffer financial harm." ECF No. 192 at 2 (emphasis omitted).  The Waldens maintain these facts involving cash-sweep accounts were disclosed on January 19, 2023 during the deposition of BNY's corporate designee, Patrick Crowe. *Id*. at 5.  The Waldens did not, however, move to amend their complaint to add these new facts and theories until January 31, 2025, and instead maintain their expert "cited to and relied heavily on the conflicts arising from BNY's practice of allocating clients' cash to bank accounts at BNY in his report." *Id.*

It is undisputed that the Waldens did not move to amend their complaint to add their novel theory related to cash sweep accounts until three years after the Court imposed deadline for amending pleadings lapsed.  When a party moves to amend a pleading after the deadline in the court's scheduling order has passed, the party must first establish "good cause" for doing so under the standard set forth in Fed. R. Civ. P. 16(b)(4) before the court considers whether the party has met the more liberal standard for amendment set forth in Fed. R. Civ. P. 15. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

Whether "good cause" exists to support a plaintiff's request to amend a pleading outside of a court-imposed deadline "depends in part on a plaintiff's diligence." *Id.*  Several courts recognize if a plaintiff "knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." *Jackson v. Locust Med., LLC*,

No. 4:22-CV-00424, 2024 WL 2701695, at *1 (M.D. Pa. May 24, 2024).  "This principle, however, may be rebutted by a clear and cognizable explanation why the proposed amendment was not included in the original pleading." *Chan. v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007).

The Waldens argue they have met both the good cause standard set forth in Fed. R. Civ. P. 16(b) and the more liberal standard in Fed. R. Civ. P. 15.  As for "good cause," the Waldens argue "despite their diligence, [the Waldens] could not have reasonably amended before the Court's deadline" because "the operative facts" related to their cash sweep theory "were only confirmed through the depositions" during discovery that occurred on January 19, 2023, ten months after the Court's March 1, 2022 deadline to amend pleadings. ECF No. 192 at 4-5.  While newly discovered evidence can support a finding of good cause under Fed. R. Civ. P. 16 to allow amendment, *see Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 119 (W.D. Pa. 2010), good cause is not shown when a plaintiff is not diligent in seeking the discovery that led to their motion to amend or when the evidence is not actually "newly" discovered. *Karlo v. Pittsburgh Glass Works, LLC*, No. CIV.A. 10-1283, 2011 WL 5170445, at *3 (W.D. Pa. Oct. 31, 2011) (finding no good cause to amend complaint under Fed. R. Civ. P. 16 where plaintiffs did not conduct discovery for six months after initiating the suit, received discovery that they alleged supported amendment and did not seek to amend or extend the deadline to amend for "several weeks"); *Graham*, 271 F.R.D. at 119–20 (no good cause where evidence is not actually newly discovered).

Assuming the Waldens are correct in asserting the first time they could have reasonably discovered their new cash sweep account theory was in January 2023 through BNY's corporate designee's deposition testimony, they do not explain why they waited more than two years to move to amend their complaint after having that information nor do they justify their lack of diligence in doing so.  The fact remains that the Waldens moved to amend the complaint on January 31, 2025, only after the Court rejected their attempt to incorporate the cash sweep theory in their brief in opposition to BNY's motion to dismiss for lack of subject matter jurisdiction, and after the Court further prompted that should they seek to litigate such claims they would need to seek leave to do so.[5] ECF No. 189.

The Waldens also argue they reasonably believed the cash sweep account theory was pleaded in the first amended complaint. ECF No. 192 at 5.  Despite the fact the Waldens do not cite to any allegations in their amended complaint they believe supports their cash sweep account theory, and this Court independently having found none, this argument contradicts their assertion that they did not know about the cash sweep account theory until discovery revealed it in January 2023. The amended complaint was filed a year and a half earlier in June 2021. ECF No. 40.  The Waldens cannot have both adequately pleaded this novel theory of liability

---

[5]    The Court also notes the Waldens had notice they had not adequately pleaded this claim in September 2023 when BNY challenged whether the cash sweep account theory was pleaded in the amended complaint in its response to the Waldens' motion for class certification, and still did not move to amend the complaint.

in June 2021 and not have known of the facts supporting it (and therefore could not have sought amendment) until January 2023.

Moreover, the Waldens concede that their own expert, Edward D. O'Neal, Ph.D., "cited to and relied heavily on the conflicts arising from BNY's practice of allocating clients' cash to bank accounts at BNY in his report." ECF No. 192 at 5. Dr. O'Neal's report was authored on March 17, 2023. By their own admission, the Waldens possessed the relevant knowledge upon which the cash sweep account theory rested, if not during BNY's corporate designee deposition, by at least March 2023. Their own expert confirmed their theory of liability in his expert report, yet the Waldens did not move to amend their complaint to include it for almost another two years. Such a lengthy delay does not support a showing that the Waldens acted diligently.

The Waldens also argue they were diligent because the cash sweep account theory was actively litigated at the pre-class certification summary judgment stage and allowing amendment to include this theory now would "not infringe upon the Court's ability to efficiently adjudicate this matter." ECF No. 192 at 6. Whether the cash sweep account theory became part of the litigation by virtue of reference to these claims during a pre-class certification motion for summary judgment and related decision is in essence an argument for implied consent of amendment under Fed. R. Civ. P. 15(b)(2), which the Waldens have again[6] not raised in their briefing,

---

[6]    In its decision granting BNY's motion to dismiss the class claims as preempted by SLUSA, the Court invited the Waldens to file the present motion and specifically noted the Waldens had not

have not otherwise presented any legal authority for, and the Court will not address *sua sponte.*[7] *Mullen v. Ashirward Hosp., LLC*, No. 2:23-CV-01277, 2024 WL 936322, at *6 (W.D. Pa. Mar. 5, 2024) (failure to raise an argument "means that argument is forfeited.") (collecting cases).

The Waldens' arguments that allowing amendment would not impact this Court's ability to efficiently adjudicate this matter and would not meaningfully change the litigation because their new theory is still based on BNY's alleged failure to disclose conflicts to its clients are also without merit. ECF No. 192 at 8. While on the surface, both theories involve conflicts of interest, the Waldens' new cash sweep account theory contradicts claims originally pleaded in their amended complaint. The Waldens' proposed claim that BNY *should have* invested in BNY-affiliated funds instead of placing clients' assets in cash sweep accounts with low interest rates and fees contradicts the Waldens' theory of the case from its inception: BNY *should not have* invested in BNY-affiliated funds due to undisclosed conflicts of interest and the affiliated funds' underperformance.

Even if the facts underlying the cash sweep account theory do not substantively contradict the Waldens' original theory related to investing in affiliated funds, it remains that the cash sweep account theory is grounded on new facts, based on a novel legal theory, not previously pleaded, for which the Waldens

---

made any "argument for constructive amendment or implied consent of such amendment" for their cash sweep account theory claims in response to BNY's motion to dismiss. ECF No. 189 at 25.

[7]    The Court notes that the Court of Appeals for the Third Circuit has not yet addressed whether implied consent to amend a pleading under Fed. R. Civ. P. 15(b) applies at the summary judgment stage. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 326–27 (3d Cir. 2012) (n. 7 noting the circuit split).

had knowledge of years before seeking to amend. Allowing the Waldens to amend

to proceed with this claim would start this litigation anew and hamstring this

Court's ability to efficiently adjudicate this matter. From the inception of this

litigation almost five years ago, the parties focused class and expert discovery based

on the Waldens' theories set forth in their amended complaint that BNY breached

its fiduciary duties by not disclosing it purchased underperforming affiliated mutual

funds it had a financial interest in and implemented employee compensation

policies that rewarded BNY advisors to invest in these affiliate funds. ECF No. 40

at ¶ 6. Whether BNY's placement of clients' cash into bank accounts instead of

BNY-affiliated money market funds violated its fiduciary duty has thus far not been

– as acknowledged by the Waldens – a focal point of this litigation. *See supra* at p. 6.

Moreover, the Waldens admit that their proposed second amended complaint,

which focuses solely on the cash sweep account theory, "removes all allegations

related to securities[,]" *i.e.*, it removes the fundamental crux of the case that BNY

breached fiduciary duties by not disclosing potential conflicts of interest when it

invested in affiliated mutual funds. ECF No. 192 at 3. *See also* ECF No. 192-2

(comparing the Waldens' amended complaint with their proposed second amended

complaint). Thus, the Court is not convinced if amendment were permitted, the

parties (and the Court) would be able to essentially pick up where they left off in

litigation. Despite the class certification and pre-class summary judgment motions

referencing the cash sweep account theory, because that was only one of several

theories that the Waldens advanced and was not the focus of litigation until that

point, the Court finds it more likely that it would be necessary for the parties to conduct a fresh round of class and expert discovery focused on this new theory[8] and undergo another round of dispositive motions practice, including re-briefing the motion for class certification, after almost five years of litigation and two years after the Waldens had notice of these facts.[9]

Ultimately, the Waldens were not diligent in seeking to amend their complaint to include their cash sweep account theory after discovery revealed their theory of liability over two years before they sought to amend their complaint and have failed to rebut the presumption by a clear and cognizable explanation of why they did not diligently move to amend their complaint after learning of this new information.  They have therefore not shown good cause under Fed. R. Civ. P. 16 and because they failed to meet this threshold showing, the Court need not address the additional arguments made for amendment under the more liberal standard of Fed. R. Civ. P. 15. *Premier Comp Sols., LLC*, 970 F.3d at 319.

## IV.   Conclusion

Based on the foregoing, the Waldens' motion for leave to file a second amended complaint ECF No. 191 is DENIED.  An appropriate Order follows.

---

[8]      While it appears at least some discovery was conducted related to the cash sweep account theory, as it was briefly mentioned in Dr. O'Neal's expert report and BNY deposed Dr. O'Neal on this theory, *see* ECF Nos. 121-1 at ¶¶ 47-49; 121-3 at 244:13-270:20 – it does not appear the discovery conducted went any further than that, nor does it appear in the record that the parties fully engaged in discovery on this topic.

[9]      Whether the reason for the Waldens' delay in seeking amendment is attributable to attorney oversight or, in the alternative, is a litigation tactic after an unfavorable ruling on summary judgment which foreclosed their class claims as pleaded matters not – neither reason justifies "good cause" under Fed. R. Civ. P. 16(b). *Graham*, 271 F.R.D. at 121.

DATED this 22nd day of September, 2025.


BY THE COURT:


s/Christopher B. Brown
United States Magistrate Judge